> Proceeds arising from a sale of the assets of a corporation in which a testator held stock, and of which proceeds his estate received its proportionate share on a division thereof among all the stockholders, do not constitute income derived from the earnings of the estate, but form a part of its capital, and, as between tenant for life and remainder-men, belong to the remainder-men.

On application for the judicial settlement of the account of Catherine Curtis and others, executrix, etc., of John Skillman, deceased.

*John S. Van Cleaf*, for executrix.   *John P. Adams*, for Catherine A. Curtis.   *E. S. Atwater*, for Mary D. Van Gieson.   *Henry M. Taylor*, for Catherine A. Van Gieson.

ABBOTT, S.   I agree with the conclusions reached by the learned referee in his report in this matter, except in one particular, to-wit, I think the sum of $9,375 received by the executrix in 1870 from the Brooklyn Gas-Light Company was capital, and not income, and that the referee erred in holding it to be income to which the life-tenant was entitled.   The testator gave the income of his personal estate to his wife for life, with remainder over.   He died in 1865, and at the time of his death owned stock in the Brooklyn Gas-Light Company.   This was not disposed of by the executrix, and the dividends, as they accrued, were paid to the life-tenant.   On October 7 and 25, 1870, the Brooklyn Gas-Light Company passed resolutions, of which the following are copies: "Resolved, that on the 15th instant, twenty-five per cent. be apportioned among the stockholders of this date, being the proceeds of the property sold and set off by this company to the People's Gas-Light Company, and that the transfer books will close from this date to November 1, 1870."   "Resolved, that on the 29th of October, instant, fifty per cent. be apportioned among our stockholders of October 7, 1870, being the proceeds of the property sold and set off by this company to the Nassau Gas-Light Company."   Edward Storey, secretary of the Brooklyn Gas-Light Company, testified that at that time, and since about 1860, the capital stock had been $2,000,000, and has since continuously been $2,000,000, on which it has paid taxes and dividends from that time until now.   On cross-examination he says: "*Question.* Won't you state what the sale made by your company to the other companies included? *Answer.* The street mains, service-pipes, and meters, and I guess what you might call good-will.   *Q.* All your interest in the district as a gas company? *A.* Yes, sir."   He also testified that the property sold constituted about one-half of the whole territory of the company.   This was clearly a sale of one-

half of the plant or property constituting the assets and capital of the company, and was simply a change of so much of its capital into money. It was not a dividend declared out of surplus earnings or profits, or a fund derived in any way from the earnings of the corporation. The resolutions did not contain the word "dividend," or attempt to characterize what was divided as "income," or even call it a "division of profits." They simply provide that the proceeds of sale "be apportioned among our stockholders." If they could sell one-half of their property, and divide it as income, I see nothing to prevent their so disposing of their whole property, and so dividing it, to the total annihilation of the remainder. The case of *Riggs* v. *Cragg*, 26 Hun, 89, is similar to this in its facts. Judge DANIELS says, (page 106:) "A stock dividend of five per cent. was declared by the New York Gas-Light Company in October, 1853, which was received by the executors. But it appeared by the evidence that the fund out of which this dividend was made, formed no part of the earnings of the company, but it was realized by a sale of its real estate on Canal, Centre, and Hester streets, in the city of New York. This dividend accordingly was not governed by the legal principle indicating the appropriation proper to be made of stock dividends declared out of surplus earnings, for it was really made from the proceeds of property constituting a part of the capital of the corporation, and which the directors considered themselves justified in declaring in the then financial condition of the corporation. It was not appropriately income received by the estate, but it was in the nature, so far as it extended, of a change in its capital. It was properly, therefore, so regarded by the executors, and it could not be carried into the accounts as the income of the estate." The court of appeals reversed this case on grounds entirely foreign to this question, and say, (89 N. Y. 487:) "The right to stock dividends, as between tenant for life and remainder-man, has not been considered by the court of last resort in this state. The decisions upon the subject in other states and in England are conflicting, and it will be the duty of this court, when occasion arises, to seek to settle the question upon principle, and establish a practical rule for the guidance of trustees and others, which shall be just and equitable as between the beneficiaries of the two estates." In *Re Kernochan*, 104 N. Y. 618, 11 N. E. Rep. 149, the only dividend decided to belong to the life-tenant was one conceded to have been declared out of accumulated net earnings. At page 627, Judge DANFORTH says: "This dividend was numbered 91, in regular order, and was payable and paid at the time the usual quarterly dividends were paid." It appeared, also, that the assets which formed the consideration of the payment by the syndicate were accumulated net earnings, represented by cash, or securities calling for cash. This case is not authority for the contention that proceeds of sale of assets and property, concededly constituting a part of the capital of a corporation, shall go to the life-tenant instead of the remainder-man, simply because of a resolution directing the divisions of such proceeds of sale among stockholders. The early English rule, that all "stock dividends," so called, together with all extra cash dividends of bonuses, belong to the remainder-man, has been so changed that dividends in money, which come from the earnings of the capital invested, belong to the life-tenant. Perry, Trusts, (4th Ed.) § 545. The converse of this proposition is that dividends which do not come from the earnings of the capital invested belong to the remainder-man. I am of the opinion that the referee erred in crediting the sum of $9,375, so received by the executrix, to income, instead of capital. Let referee's report be confirmed, except in this particular.