In the Matter of the Petition of BROOKLYN TRUST COMPANY to Render and Settle Its Account as Trustee of a Trust Created for the Benefit of CORNELIA B. JACKSON in and by the Will of THEODORE F. JACKSON, Deceased.

Surrogate's Court, Suffolk County, December 16, 1929.

*Cullen & Dykeman*, for the petitioner.

*Coombs & Wilson*, for the executor of will of Cornelia B. Jackson.

*Humes, Buck, Smith & Stowell*, for the remaindermen.

*Frederick W. Tuck, Jr.*, special guardian.

PELLETREAU, S. Some features of this estate were before this court and a decision rendered thereon by Surrogate NICOLL on the last day of his official term in 1915. The same was based upon the facts and circumstances as they were or appeared to be at that time.

At the time of his death Theodore F. Jackson owned 660 shares of the Vandervoort Realty Company. In his will he gave his widow, Cornelia B. Jackson, 160 shares thereof. The remaining 500 shares passed into a trust created for her benefit. He also gave her outright his residence at Westhampton Beach in the town of Southampton, his personal effects, the sum of $150,000, and a life interest in his residuary estate. It appears that at the time of Mr. Jackson's death his widow already possessed $46,260 in her own name. The gross estate left by Theodore F. Jackson was $863,732.73. The account shows the principal value of the trust as set up to have been $629,745.12.

The assets of the Vandervoort Realty Company consisted of real

property carried on its books at a valuation of $187,000. There were 1,870 shares of stock at a par value of $100 each. The par value of the 660 shares owned by Mr. Jackson would be $66,000. The transfer tax proceedings as shown by the files in this office indicate a value thereof on June 18, 1913, the date of the death of Mr. Jackson, of $155 per share, which reflects a total value of the 660 shares to be $102,300. The 160 shares given Mrs. Jackson outright in the will, therefore, had a value of $24,800. The 500 shares remaining which went into the trust likewise had a value of $77,500. The account indicates that of the 500 shares turned into the trust, the trustee later sold 40 shares, leaving 460 shares on hand. The trustee has carried this stock in the trust at a valuation of $155 per share, or a total value of $71,000.

Mrs. Jackson received from the trust fund in the hands of the trustee an income of approximately $21,000 a year until her death October 31, 1928. She had other property and an income therefrom. At the time of her death on October 31, 1928, aforesaid, she left a gross estate appraised at $429,167.12 as shown in proceedings to fix the transfer tax upon her estate.

About December 1, 1927, the Vandervoort Realty Company sold the greater portion of its property to the Long Island Railroad Company, and declared a cash dividend of 100 per cent. On December 9, 1927, during the lifetime of the beneficiary, the trustee received $46,000 in cash in payment of this dividend. It is stipulated herein that the Vandervoort Realty Company still owns all of its remaining property, and the same has been appraised at the sum of $100,000.

The 11th paragraph of the will of Theodore F. Jackson reads as follows: " I give and devise the residue of my estate to The Long Island Loan and Trust Company, in trust, to receive the rents, profits and income of the same and to pay over the same to my beloved wife during her natural life, the provision in the Will made for my wife to be in lieu of her dower in my estate."

The 13th paragraph of said will reads as follows: " For the purpose of making a final distribution of said residuary estate, I direct the said trustees to sell and dispose of all my real estate held by them in trust. I authorize them in their discretion to sell at any time any of my unproductive real estate and convert the same into money and to invest the proceeds in any securities which are by law allowed to be held by Savings Banks in this State. I authorize the said trustees to retain and hold as investment of said trust, any stocks or other securities which I may hold at the time of my decease."

The 1st paragraph in the codicil to the last will of Theodore F.

Jackson reads as follows: " I give and bequeath to my beloved wife, Cornelia B. Jackson, in addition to the property bequeathed to her by my Will, my automobile and one hundred and sixty shares of my stock in the Vandervoort Realty Company, which shares I recommend her to retain and hold during her life, and I give to her the sum of $50,000 in addition to the sum and other property given her by my said Will."

A demand was made on behalf of the life beneficiary upon the trustee for the payment of the extraordinary cash dividend to her. The trustee took the position that it should act under the direction of the court. Before an account could be prepared and the matter submitted to the court, the life beneficiary died.

Now comes the question: Does this extraordinary cash dividend belong to the life beneficiary or to the remaindermen?

I think that is determined and should be determined by the intentions of the creator of the trust. Theodore F. Jackson was a man of prominence, well known as a man of great knowledge and understanding, and experienced in the law. He knew that a part of the estate in the trust which he created in his will consisted of stock of the Vandervoort Realty Company. I think it is fair to assume from what appears in this matter that he realized or believed that some day it would be extremely valuable. He desired his widow to benefit by such increase. He gave her 160 shares of this stock outright, with instructions for her to hold it until it should increase in value.

I am of the opinion that the profit realized by the Vandervoort Realty Company on the sale of the greater part of its property did not constitute earnings. I think I would call the dividend an extraordinary one. It was more a distribution of assets of the corporation than a dividend. It apparently is a rule in this State that increment in value of corporate property, as distinguished from earnings, is capital in which the life beneficiary is not entitled to share.

In *Thayer* v. *Burr* (201 N. Y. 155) Judge BARTLETT says: " It is very plain that the life tenant was not entitled to this increase in the value of the corpus of the trust any more than she would have been chargeable for any depreciation in the value of the corpus."

It is claimed that, since an ultimate increase in the value of its land was a principal object of the company, that increase when arrived at must be considered earnings. That theory is untenable. Under such a theory, the profits on investments in trust estates could be made to appear to be income. The principal of a trust would have everything to lose and nothing to gain. The corporate entity would be ignored.

How about this? If Theodore F. Jackson had died seized of this real estate, or his proportionate share therein, the proceeds of sale would have been principal whether greater or less than the estimated value at his death. The life beneficiary would have been entitled to the rentals therefrom as in this case, no more, no less.

The claim of the executors of Cornelia B. Jackson for any portion of the extraordinary dividend of $46,000 declared by the Vandervoort Realty Company, and for any portion of the net proceeds of sale of the unproductive real estate is not sustained.

The objections of the remaindermen to the items of taxes and carrying charges on the unproductive real property on the ground that the same should be charged to income instead of principal are dismissed. I think such conclusion is in accordance with the intention of the creator of the trust.

Another item in dispute in this matter is the Gabriel mortgage of $9,000 held by the trustee. On June 10, 1917, the trustee accepted a deed for the premises to save expenses of foreclosure. At the time accrued non-paid interest thereon was $1,840, making a total debt due of $10,840. In April, 1919, the trustee sold the premises for $7,250. The trustee deducted $1,840 from the proceeds of the sale and reimbursed income. That left $5,410 which was credited to the principal account. The principal account was thus made to bear the entire loss by reason of the mortgage investment.

The remaindermen claim that the entire $7,250 should have been credited to principal and the income made to suffer its entire loss of $1,840, by reason of this mortgage investment. On the other hand, the estate of the life beneficiary claims that the loss should be apportioned as between principal and income.

I am inclined to the belief that the contention of the estate of the life beneficiary in this regard is correct, and it appears to be sustained in the case *Meldon* v. *Devlin* (31 App. Div. 146; affd., on opinion of Appellate Division, 167 N. Y. 573). Under the rule laid down in *Meldon* v. *Devlin*, aforesaid, the account should be corrected by allowing to principal 9000/10840ths of the said $7,250, or $6,019.38, and allowing to income 1840/10840ths of said $7,250, or $1,230.62. In the account there has been credited to income the entire unpaid interest; on the basis of the above figures the principal is entitled to a balance of $609.38.

In Schedule F, part 2, of the account, the item of $99.84 paid tax receiver March 26, 1916, should be charged to principal, and the income given credit therefor. The tax items of $24.66 and $127.24 paid respectively June 19, 1916, and June 6, 1917, are properly charged to income. The item of $200 paid United States

Title Company should be charged to principal, and that item should be given credit therefor.

Objections have been raised to certain items in Schedule F, part 2, of the account. The item of $165 for new fence on the Knickerbocker avenue premises, October 2, 1915: I am of the opinion that item is for a permanent improvement. Charges for repairs should be met by the life beneficiary, but the life beneficiary is under no obligation to make improvements. This is a charge against principal and should not be charged against income as was done by the trustee. The item of $30 for appraising Johnson and Knickerbocker avenues, April 5, 1918: This should be charged to principal, and income credited for that amount. The two items of $1,725 and $400 for cement work and inclosing shed: As shown by the testimony of Mr. Gray, these items were for improvements, not repairs. They should be charged to principal and the income account should be credited for the aggregate of these items, $2,125. The items of $70 and $1,105 for new roofs on office building and warehouse: I think these were replacements or improvements. As capital expenditures, they are chargeable to principal and not income. The income account is, therefore, entitled for credit to their aggregate, or $1,175. The item of $130 for building a concrete wall, October 22, 1926: I consider this an improvement to property. It should not have been charged to income account. The income account is entitled to $130 to cover this item. The item of $609.60 for fire insurance: This should be charged to principal. The income account is entitled to a credit of $508. It appears that this fire insurance was effected six months before the death of the life beneficiary.

The trustee is entitled to full commissions fixed by law. The parties who have appeared in the contest herein are awarded costs to be taxed against the trust estate, and the special guardian is allowed $500.

Submit decree.