In the Matter of the Petition of BROOKLYN TRUST COMPANY to Render and Settle Its Account as Trustee of a Trust Created for the Benefit of CORNELIA B. JACKSON in and by the Will of THEODORE F. JACKSON, Deceased.

STEWART M. NEFF, as Surviving Executor, etc., of CORNELIA B. JACKSON, Deceased, Appellant; BROOKLYN TRUST COMPANY, Trustee, and Others, Respondents.*

Second Department, May 15, 1931.

* Affg. 135 Misc. 329.

*Robert H. Wilson,* for the appellant.

*Albridge C. Smith [Boyd L. Bailey* with him on the brief], for the remaindermen, respondents.

*Ralph W. Crolly,* for the trustee, respondent.

DAVIS, J. The executor of the will of Cornelia B. Jackson, deceased, appeals from portions of the decree of the surrogate on the final accounting of the trustee of a testamentary trust created by Theodore F. Jackson, and presents two propositions:

1. That a cash dividend of 100 per cent declared by the Vandervoort Realty Company is income and not a capital sum.

2. That the proceeds of the sale of certain unproductive real property in the trust estate should be apportioned between principal and income.

There is practically no dispute on the facts. Theodore F. Jackson died on June 18, 1913, at the age of eighty-three years. He was survived by his wife, Cornelia B. Jackson, then seventy-six years of age. The widow died in 1928 at the age of ninety-one. Mr. Jackson had no descendants. His nearest relatives were nephews and nieces. The gross estate amounted to $863,732.73. By his will, executed on February 11, 1911, he gave to his wife $100,000 in cash or securities, and his real and personal property at Southampton, Long Island, valued at $29,460. Under a codicil executed February 14, 1913, the wife received an automobile, 160 shares of stock in the Vandervoort Realty Company, and an additional $50,000. With the exception of a few minor bequests, the remaining portion of his estate was disposed of as follows:

" *Eleventh.* I give and devise the residue of my estate to The Long Island Loan and Trust Company, in trust, to receive the rents, profits and income of the same and to pay over the same to my beloved wife during her natural life, the provision in this Will made for my wife to be in lieu of her dower in my estate."

The remainder was devised to nephews and nieces and their issue.

Included in the trust estate were 500 shares of Vandervoort Realty Company stock, appraised at the time of the testator's death at $155 a share. Forty shares were sold by the trustee. A dividend on the remaining 460 shares constitutes the first subject of controversy.

1. Between 1881 and 1895, Jackson and certain relatives became

owners as tenants in common of several parcels of unimproved land in Brooklyn. All of this property " was purchased and was carried by the owners for a number of years in anticipation that the property would at some time become very valuable." The corporation was organized in 1906 with a capital of $187,000. The owners conveyed their several interests in the property to the corporation and received stock in proportion to such interests.

The admitted purpose of forming the corporation was to acquire the interests of the cotenants so as to avoid any complications in the title and make it possible to dispose of the property readily at any time when it might become expedient to sell it. The corporation did not develop or improve the property, and it never acquired or operated any other property. No sale was made until 1927. Parts of the property were rented during the lifetime of the testator and subsequently; and from the profits the corporation paid dividends. These dividends (on par value) from 1906 to 1928 varied from one and one-half per cent to twelve per cent per annum, averaging about five per cent.

A sale of the greater portion of the property was made in December, 1927, the corporation receiving therefor $430,026.44. The remaining portion has been appraised at $100,000. Following the sale the board of directors declared " that a dividend of 100% be paid on this date to stockholders of record of this Company, to be paid out of the surplus earnings of the Company." Concededly the remaining assets exceed the appraised value of the property in 1913. The dividend received by the trustee was $46,000.

The first question relates to this dividend. The remaindermen claim that this sum is principal; and the executor, representing the legatees of the wife, claims that the sum was derived from profits and was income properly payable to her. The surrogate determined that this dividend was a part of the capital of the trust.

The corporation was organized to hold title of unimproved property theretofore held by individuals, to avoid complications which might arise through death and misfortune. The purpose was to await opportunity for a profitable sale. It was not intended to improve the property by laying it out into lots or constructing buildings, or to deal in other property. It was simply a holding corporation. Any rentals derived were purely incidental to the main purpose of sale. The amount received on the sale was greatly in excess of the purchase price. This profit, therefore, was an unearned increment and did not depend at all upon activities of the corporation.

In determining whether there has been a dividend from profits

or a division of the capital sum, the rule is that the intention of the testator must be discovered if possible; and if it cannot be ascertained from what is said, then the question must be determined by the application of legal principles.

It appears that Mr. Jackson was a lawyer specializing in wills and administration of estates. He prepared his own will, and it is agreed that there is nothing in its language expressing any intent on this subject. The appellant argues that the intent gathered from the whole will indicates that his wife was the sole object of his solicitude, and that the remaindermen held an unimportant place in his mind at the time the will was executed. To the latter he owed no duty and they had no rights in his property, moral or legal; while his outstanding purpose was to provide for his wife. (*Woodward* v. *James*, 115 N. Y. 346.)

Furthermore, it is argued that a corporation like this may deal in real estate as a commodity, and dividends arising from sales are income. Cases are cited which are very persuasive unless closely analyzed. In *Matter of Enz* (204 App. Div. 634; affd., 237 N. Y. 577) the trust estate created in 1906 consisted in part of land company stock. The expressed corporate purposes were the " buying, selling, managing and owning lands in the Territory of Dakota and working, cultivating and managing the same and marketing their products." The corporation engaged in farming and leasing lands, and disposed of extensive crops grown thereon. The lands were laid out into lots and farms developed, and sales of acreage were made in the ordinary course of business, and dividends declared periodically. The remaining land was worth more than the original investment. In holding that dividends of this corporation were income rather than a division of capital, and recognizing that " dividends representing the proceeds of sale of capital assets belong to the remainderman," the court held that this was one of the exceptional cases, and that " these were ordinary dividends, paid in cash out of current profits. They were charged to ' profit and loss ' on the books of the company, and the amount of capital stock remained undiminished." The distinction between the *Enz* case and the one here considered is readily recognized. There the corporation engaged in buying and improving lands as a business, and its profits were expected to come from the sale of portions of the property as laid out and developed, with the capital stock undiminished; and these dividends had been declared for years. In this case there was to be no sale of the lands until there had been an accretion in value, and there was no purpose of improving and developing the tract in the meantime, and no

dividends were to be declared as a result of improvements or sales. (Cf. *Miller* v. *Payne*, 150 Wis. 354.)

*Matter of James* (78 Hun, 121; affd., 146 N. Y. 78) is a case where dividends from the sale of lands were held to be income. Again it was held that there must be a departure from the general rule in order to carry out the intent of the testator, whose purpose it was that his widow should receive the avails of sales; otherwise her income would be meager. Cases in other jurisdictions have held that sums received from the sale of real estate would be treated as income under extraordinary circumstances. (See *Reed* v. *Head*, 88 Mass. 174; *Oliver's Estate*, 136 Penn. St. 43; *Thomson's Estate*, 153 id. 332; *Washington County H. Assoc.* v. *Hagerstown Trust Co.*, 124 Md. 1; *Matter of Gartenlaub*, 185 Cal. 375.)

The general rule is that dividends representing the proceeds of a sale of capital assets belong to the remainderman (*Thayer* v. *Burr*, 201 N. Y. 155; *Riggs* v. *Cragg*, 26 Hun, 89; *Matter of Skillman*, 2 Connoly, 161); and accretions in principal remain capital (*Stewart* v. *Phelps*, 71 App. Div. 91; affd., 173 N. Y. 621). " Between life tenant and remainderman it [profit] is commonly an increment to principal." (*Equitable Trust Co.* v. *Prentice*, 250 N. Y. 1, 11.) The denomination given to a dividend to the effect, as here, that it is " to be paid out of surplus earnings," is of little value in determining whether as between life tenant and remainderman the dividend represents income or is a distribution of capital. (*McLouth* v. *Hunt*, 154 N. Y. 179, 198; *United States Trust Co.* v. *Heye*, 224 id. 242, 254.)

Here the purpose of organizing the corporation was merely one of convenience for holding title. If this real estate had been owned by the testator individually, the increment in value would have belonged to the remaindermen. The only result of a sale would have been a possible increase in income. The intention of the testator as disclosed in his will undoubtedly was that the widow should be adequately supported. She owned in her own right property worth $46,260. The will gave her outright a home and personal property valued at about $30,000, and $100,000 in cash. By the codicil she received 160 shares of the stock of this corporation and an additional $50,000 in cash. Besides this the trust estate, consisting of $280,000 personal property, $130,000 productive real estate, and $132,000 real estate largely unproductive, produced an average net income of over $21,000 a year. This would increase if a sale were made by the corporation and greater productive capital fell into the trust. That the testator had a definite purpose to provide for his relatives is apparent. It is then readily inferable that he did not anticipate that his widow, who was seventy-four

years of age at the time the will was made, would survive him by more than fifteen years; that the sale of the real estate by the corporation would be deferred until the year preceding her death at the age of ninety-one; or that she would be at all dependent, with the provision already made for her, upon payment to her of a capital sum arising on the sale of the corporate real estate. Rather it is likely that in advising her in the codicil to hold her own 160 shares he contemplated an earlier sale in her lifetime, followed by a distribution of the capital of the corporation. This, as he might anticipate, would increase her income from her own estate and the productive capital of the trust. The testator was an experienced lawyer and knew the character of his investments. If he desired that there should be a departure from the general rule of application of accretions it would have been natural for him to have so provided in the will. Undoubtedly he knew that the provision for her support and maintenance was adequate without recourse to a distribution of capital as income. At the time of her death her gross estate amounted to $429,167.12. The general rule as to increment of capital must be applied.

2. In the property devised in trust there were parcels of real estate — some being productive and some unproductive. Portions of the unproductive lands were sold from time to time during the lifetime of the beneficiary. It is claimed by the appellant that the amount so received should be apportioned between income and capital, for it was contemplated that the property devised in trust should produce income. The surrogate held that the whole amount was principal.

In paragraph 13 of the will there was a provision directing a sale by the trustees to make final distribution. This language follows: " I authorize them in their discretion to sell at any time any of my unproductive real estate and convert the same into money and to invest the proceeds."

Real estate in fact unproductive was sold for $104,850. These sales were made in separate parcels between October 26, 1919, and October 29, 1925. The appellant claims that the law of the case is that there should be apportionment; and that an earlier decree in 1915 is a binding and conclusive adjudication on the subject. In that year there was a proceeding before the surrogate in which the widow sought to be relieved from the payment of charges on this unproductive real estate and have them paid from the principal. The surrogate made a decree on an intermediate accounting to that effect. No appeal was taken. The determination made by the intermediate decree is not binding as to the ultimate rights of the parties. (*Brinkley* v. *Brinkley,* 50 N. Y. 184, 202; *Webb* v.

*Buckelew*, 82 id. 555; *Rudd* v. *Cornell*, 171 id. 114, 129, 130.) The decision of the surrogate determined no more than that an equitable rule should be applied. Subsequently the property was sold and the productive trust estate increased, with greater income to the beneficiary. In unusual cases there have been apportionments between income and principal. (*Lawrence* v. *Littlefield*, 215 N. Y. 561; *Spencer* v. *Spencer*, 219 id. 459; *Furniss* v. *Cruikshank*, 230 id. 495.) In those cases, if the income had been applied to the payment of charges on the principal or there had been no apportionment, the beneficiary would have been left practically destitute. As we have said, no such situation is presented here. The general rule is that where no intention of the testator is apparent there should be no apportionment between beneficiary and remaindermen of the proceeds of the sale of unproductive real estate; and there is no evidence here of intent that there should be equitable conversion. (*Yates* v. *Yates*, 28 Beav. 637; *Matter of Marshall*, 136 Misc. 116.) The intent of the testator evidently was that the enjoyment of certain income should be deferred until the trustee exercised its discretionary power of sale. To justify the impairment of the capital of a trust fund the intent of the donor must be expressed in words of the most unmistakable import. (*Matter of Albertson*, 113 N. Y. 434.) We think this question was correctly decided by the learned surrogate.

Those portions of the amended decree from which the appeal is taken should be affirmed, with costs, payable out of the estate, to all parties filing briefs.

Present — LAZANSKY, P. J., YOUNG, KAPPER, CARSWELL and DAVIS, JJ.

Amended decree of the Surrogate's Court of Suffolk county, in so far as appealed from, unanimously affirmed, with costs, payable out of the estate, to all parties filing briefs.