In the Matter of the Estate of GUSTAV HEUBACH, Deceased.

Surrogate's Court, Kings County, November 23, 1937.

*Harry Wandmaker*, *pro se* and for the City Bank Farmers Trust Company, as substituted trustee, for the executors of Jennie Heubach, deceased trustee, and for Edward A. Behr and Maximilian E. Pesnel, trustees of Gustav Heubach, deceased, for the motions to dismiss answer and objections, and in opposition to motion for direction to amend account.

*Gross & Keck*, for Gustav Edward Heubach, individually and as executor of Jennie Heubach, deceased trustee of decedent herein, objectant, for the motion for direction to amend account and in opposition to other two motions.

*Thilo C. Schulze,* special guardian for the infant contingent remaindermen, for motions to dismiss the answer and objections and in opposition to the motion for direction to amend account.

*Campbell & Whipp,* for Hedwig Behr, Carl Von Goeben and Roland Von Goeben, legatees, in opposition to the motion of Gustav Edward Heubach, for direction to amend account.

*Topken & Farley,* for Emmy Escher, Elsa Escher, Maja Langguth, August Vallhart, the towns of Lehesten and Staufen and the cities of Sonneberg and Munich, in opposition to the motion for direction to amend account and in support of the motions to dismiss the objections.

WINGATE, S. Three motions are here presented for adjudication, one by an objector to the account of the trustees, which seeks a direction for the filing of an amended account, and two by his opponents, who are respectively such trustees and the special guardian for contingent remaindermen, to dismiss his objections.

The will erected a trust for the life use of the widow during which period she was to receive "the whole net income" thereof. The present objector is one of her executors. The salient facts underlying the controversy are that among the possessions of the decedent were 619 shares of preferred and 2,450 shares of common stock of Herman Behr & Co., Inc., which was the incorporation of a partnership in which he previously had owned a quarter interest and in which he received a stock distribution of a substantially equivalent proportion. The trustees were authorized to hold this stock as an investment, and did so. During the four years succeeding the testator's death the business proved an extremely profitable one. In 1928 the company was consolidated with another corporation named the Manning Abrasive Company, a new corporation known as the Behr-Manning Corporation being organized. The trustees, as stockholders of Herman Behr & Co., received in exchange for their stock in the old company, 3,069 shares of the preferred and 6,125 shares of the common stock of the new company and also 2,450 shares of another corporation known as the Adamant Corporation. It was at this point in the history of the corporate mutations that an intermediate judicial settlement of the accounts of the trustees occurred. The decree in this regard was dated July 22, 1931.

Subsequent to the date of the decree, several additional reorganizations and reincorporations occurred which finally resulted in the exchange, share for share, of the stock of the Behr-Manning Corporation for like stock of the B-M Holding Corporation, a Delaware concern. Three thousand of the common shares have

been sold, leaving 3,125 shares of this issue, 3,069 preferred shares and the 2,450 shares of the Adamant Corporation still in the hands of the trustees.

The life tenant has died and certain outright remainder legacies are now payable, the balance of the principal to be held on a secondary trust for the life of testator's son, Gustav, who, in the capacity of executor under the will of his mother, the primary life beneficiary, is the present objector.

The supplementary petition of the accounting trustees reads in part as follows:

" Upon information and belief, that Herman Behr & Company, Inc., Behr-Manning Corporation, Adamant Corporation, B-M Holding Corporation and the Norton Company have earned substantially larger profits than they have distributed to their respective stockholders, and that the profits which have been retained by the said corporations, have been and are responsible for the increased values of their stock, and have therefore materially increased the value of the assets of this estate.

" That your petitioners are uncertain as to whether such increase or increment belongs to the corpus or principal of the estate, or whether it should, when turned into cash, be distributed to the life tenant or life tenants who were entitled to the income of the estate when such profits were earned. * * *

" Your petitioners, therefore, pray: * * * 5. That this court instruct petitioners as to whether or not the proceeds of the stock of Herman Behr & Co., Inc., should be apportioned between income and principal and if such apportionment is to be made, upon what basis petitioners shall calculate with such apportionment."

Strange as it may seem, the objections of the executor of the life tenant, which the trustees, as well as the special guardian, seek to dismiss, are chiefly founded on the same state of facts upon which the executors base this prayer for instructions. This apparent anomaly is somewhat alleviated in the memorandum filed on behalf of the trustees, which substantially adopts the traditionally correct attitude in this connection of a disinterested and impartial stakeholder. The real present controversy, accordingly, lies, as it should, between the representatives of the income beneficiary and the remaindermen.

The arguments of the special guardian for a dismissal of the objections are predicated principally on two premises, *first*, that the decree of July 22, 1931, made after the initial consolidation operation occurred, renders *res adjudicata* by reason of their inclusion as principal assets in the account then judicially settled the

allocation of the securities received in exchange for those originally owned by the testator and taken into the corpus of the trust on its initial erection; and, *second*, that the fact that the life beneficiary was a cotrustee of the trust, coupled with her failure to assert any rights which she may have had to a proper allocation as between principal and income of the securities received in such exchange, constituted a waiver of her rights in this regard and raised an estoppel against their present assertion by her personal representative.

It is important in approaching an evaluation of the first contention to note that the date of the decree effecting the former judicial settlement was July 22, 1931, which was prior to the amendment of section 145 of the Surrogate's Court Act, enacted on May 1, 1933 (Laws of 1933, chap. 642) and effective immediately. Conceivably, the first contention of the special guardian might have been valid had the proceeding in which the decree was made been instituted subsequent to that date, but the amendment was not retroactive. (*Matter of Hirshon*, 251 App. Div. 546, 548.)

The purpose of the enactment was to prevent the recurrence in future of situations similar to that which arose in *Matter of Jackson* (135 Misc. 329; affd., 232 App. Div. 425; affd., 258 N. Y. 281), in which one of the questions litigated concerned the effect of a prior decree which determined that certain charges for the carrying of unproductive realty were to be allocated against principal (232 App. Div. 425, 430). Although the trustee had apparently acted on the theory that this accomplished an effective determination on the subject, both the Appellate Division and the Court of Appeals on the subsequent accounting decided to the contrary and considered the question *de novo*, both observing that " the determination made by the intermediate decree is not binding as to the ultimate rights of the parties." (232 App. Div. 425, 430; affd., 258 N. Y. 281, 288.)

The results of such a conception, which had the effect of making a fiduciary act at his peril in spite of a solemn judicial determination of the course of conduct which he should pursue, attained after full litigation of the question, seemed so subversive of usual principles of *stare decisis*, that a remedial statutory alteration appeared to be demanded, and was accordingly effected.

The decision in *Matter of Jackson* and similar previous precedents, however, makes it clear that prior to the amendment of section 145 a decree of judicial settlement prior to complete settlement of the estate was conclusive only as to " past transactions and payments covered by them " (*Bowditch* v. *Ayrault*, 138 N. Y. 222, 231) and did not preclude a re-examination of any questions involved

therein respecting the propriety of any acts or payments made or proposed to be made at a time subsequent to that date. (*Bowditch* v. *Ayrault, supra; Frethey* v. *Durant,* 24 App. Div. 58, 62.)

The facts disclosed in the *Jackson* decisions were far stronger in respect to an establishment of the law of the case than those here disclosed, since there the question of proper allocation of expenses was actually raised and determined by the former decree. In the present instance, however, no issue as to the respective rights of life tenant and remaindermen in the assets now in controversy were litigated or decided on the former accounting, the only declaration in the decree pertinent in this regard being that the trustees were to stand charged with certain specified assets, the ultimate rights in which were then wholly immaterial, and were neither litigated nor necessarily decided. The supposed authorities to the contrary cited in the memoranda of the special guardian are not in point for reasons stated by counsel for the objectant.

The second contention of the special guardian asserting the existence of a waiver or an estoppel to assert the rights of the life beneficiary is even less substantial than the one just considered. No express waiver by her has been demonstrated and no implied waiver may be deduced from the facts, since this is a purely equitable doctrine which will be applied only on a demonstration of deliberate, informed abandonment of known rights (*Alsens A. P. C. Works* v. *Degnon Contracting Co.,* 222 N. Y. 34, 37; *Draper* v. *Oswego County Fire Relief Assn.,* 190 id. 12, 16; *Ansorge* v. *Belfer,* 248 id. 145, 150; *Matter of Miller,* 162 Misc. 563, 571; affd., 252 App. Div. 872), of which there is here no intimation.

Nor has there here been demonstrated any alteration of position on the part of any one in reliance upon the temporary failure of the life beneficiary to demand an immediate allocation between principal and income of the stocks received in exchange for the original holdings. In the absence of such a showing no estoppel *in pais* can be invoked against her or her representative. (*Lawrence* v. *Brown,* 5 N. Y. 394, 401; *Jewett* v. *Miller,* 10 id. 402, 409; *Manufacturers & Traders Bank* v. *Hazard,* 30 id. 226, 230; *Continental Nat. Bank* v. *National Bank of the Commonwealth,* 50 id. 575, 581; *Blair* v. *Wait,* 69 id. 113, 116; *Rothschild* v. *Title Guarantee & Trust Co.,* 204 id. 458, 464; *Olin* v. *Kingsbury,* 181 App. Div. 348, 355; *Matter of Leverich,* 135 Misc. 774, 778; affd., on opinion of this court, 234 App. Div. 625.)

Whereas the contentions of those seeking to dismiss the objections have been considered on the merits, the motions assume an aspect bordering on futility when it is recalled that the effect of the objection, in this connection, amounts to no more than a

joinder by the objectant in the noted prayer of the amended petition of the trustees.

The position taken by the special guardian in his report that the principles of *Matter of Densen* (163 Misc. 232), requiring payment to a life tenant, upon their actual realization by the trustees, of profits actually earned by a corporation, but unpaid during the term of his enjoyment, are not here applicable for the reason that the stockholding of the trust was insufficient to give it an effective voice in the management of the company, is wholly without merit when it is recalled that they were deemed applicable by the Court of Appeals in *United States Trust Co.* v. *Heye* (224 N. Y. 242, 254), where the holding was merely of a wholly insignificant fraction of the shares of the Standard Oil Company.

The final argument, that the coexecutor of the objectant has not joined in the objections, deserves, perhaps, a word of passing comment. It appears that this coexecutor is the attorney of record for the accountants, in which capacity he has presented a petition on behalf of his clients asserting facts which, if established, entitle the estate of which he is a cofiduciary to a recovery. His position in this connection is somewhat unusual, and would appear potentially embarrassing to him. If his failure to press the claim of the estate of which he is a fiduciary were to result in a loss of assets rightfully belonging to it he would be subject to a consequent surcharge on the objection of his *cestuis que trustent.* (*Matter of Auditore,* 249 N. Y. 335, 345.)

The obligation to reduce to possession all assets of the estate is one which rests upon both executors alike, and the court could conceive of no judicial determination which would prevent one from performing his obligation in this regard merely for the reason that his associate, while concurring in the evaluation of the merits, declined to participate. The mere fact that one executor might wish to throw a diamond ring belonging to the decedent into the trash heap should not prevent his associate from stooping to salvage it.

As a matter of fact, the adjudications are obviously consonant with this common sense conception. Coexecutors and coadministrators are joint tenants of the property of the estate (Real Prop. Law, § 66; *Mattere of Stencken,* 51 App. Div. 417, 418; *Matter of Kreischer,* 30 id. 313, 315; *Troy & Albia H. R. Co.* v. *Smith,* 11 N. Y. Supp. 261; reported by memorandum only, 57 Hun, 594), and as such, however numerous, " constitute an entity, and are regarded in law as an individual person. Consequently the acts of any one of them in respect to the administration of the estates are deemed to be the acts of all, for they have all a joint and

entire authority over the whole property." (*Barry* v. *Lambert,* 98 N. Y. 300, 308; *Matter of Hammer,* 237 App. Div. 497, 503; affd., 261 N. Y. 677.) It follows that any single fiduciary of this character possesses the authority to settle or compromise claims for or against the estate. (*Matter of Leopold,* 259 N. Y. 274, 276; *Scully* v. *McGrath,* 201 id. 61, 64.) On the principle that the greater must include the lesser, it would appear logically inevitable that he must also individually possess the right to institute an action to enforce a claim of the estate, and it has so been held. (*McGregor* v. *McGregor,* 35 N. Y. 218, 222.)

For the reasons stated the court deems the motions of the accountants and the special guardian for a dismissal of the objections to the account to be wholly without merit, and they are, accordingly, denied.

The motion of the objector remains for consideration. This seeks an order requiring the filing of an amended account which shall reflect the internal affairs of the various corporations in which stock was held, setting " forth in detail the facts which will enable the court to make a determination as to how. much of the stock holdings held by the accounting parties represents principal * * * and how much thereof represents income."

It is a uniform principle of accounting that the account is required to reflect only the acts and transactions of the parties who are seeking a judicial approval of their fiduciary performances. (Surr. Ct. Act, § 264.) Its primary purpose is to enable the court to determine whether or not they have complied with their duties respecting the assets intrusted to their charge. They are not accountable for property which did not and should not come into their hands and cannot be compelled to include it in the items of their account. (*Matter of Engel,* 140 Misc. 276, 282.) Similarly they are not accountable for any acts which they did not and could not perform, and these, similarly, are unnecessary of recital.

In the present connection the accountants did not hold a sufficient amount of the stock of any of the companies to give them a controlling voice in their management. The acts and transactions of the corporations in the declaration of dividends and otherwise were, therefore, solely their own and not those of the trustees (*Matter of Ebbets,* 153 Misc. 775, 777; *Matter of Steinberg,* Id. 339, 340), as would presumably have been the case had a preponderant proportion of the stock been in the hands of the accountants. The situation actually present is, therefore, essentially dissimilar to those in which the actuality of control requires the accountants to detail the acts of the corporation as amounting in substance to their own. (*Matter of Steinberg,* 153 Misc. 339, 346; *Matter of*

*Lesser*, 154 id. 364, 366.) All which they did as trustees in respect to the stock in question was to receive it when tendered by the separate legal entities of the corporations, and they cannot be required to reflect more in their account in this connection than those acts which they in fact performed. The acts and transactions of the corporations themselves are merely matters for ordinary proof to be adduced by those whose interests may be affected thereby.

The soundness of the argument of convenience advanced by the objector has not been demonstrated and would not be conclusive if it had been. Presumably any voluntary information which might be given by the officers of the corporations respecting their internal affairs would be accorded as a matter of favor and not of right, and there is just as great probability that this favor would be granted to the objector as to the accountants. In the event of denial, testimony on the subject could be enforced by usual process on a trial of the issues by either party with equal facility. The court will certainly not place the accountants in the embarrassing and anomalous position of being directed to do an act which they may conceivably be unable to perform and which is beyond the natural scope of their fiduciary duties.

For the reasons stated, all three motions will be denied.

Enter orders on notice in conformity herewith.