OPINION OF THE COURT
Renee R. Roth, S.
As an incident to their final accounting, the trustees request the court to settle a dispute with regard to the disposition of the remainder interest of a trust created under the decedent’s will.
Testatrix Rose Jacobs died on April 23, 1974. Her only child, Melville Jacobs (an anthropologist), had predeceased her. Mrs. Jacobs’ will established a residuary trust for the income benefit of her daughter-in-law Elizabeth. Upon Elizabeth’s death, the remainder interest was disposed of as follows: “to such organization or organizations as my trustees in their sole discretion may select from among those which are then organizations described in Sections 170 (c) and 2055 of the Internal Revenue Code of 1954” (emphasis added).
At the same time that she executed her will, testatrix addressed a letter to her nominated trustees, Samuel Seidel (her attorney and friend) and Joseph Isaacs (her grandnephew), in which she expressed her wishes for the ultimate disposition of the trust: “Under the terms of paragraph second of my will signed today, upon the death of my daughter-irrlaw, Elizabeth, you will have to appoint my residuary estate for philanthropic purposes. Without limiting your legal powers I am writing this *1021 letter to express my wishes in that regard. Elizabeth has informed me that she intends either by a living trust or will, to devote the major part of her personal estate, created by the joint efforts of herself and my late son, Melville, for certain educational purposes, particularly in the field of anthropology. I therefore request that upon Elizabeth’s death, in so far as practicable, my own residuary estate be appointed by you to the same trust, foundations or other organizations, specified by Elizabeth, and upon the same terms”.
Elizabeth died on May 21, 1983. Her will executed in 1981 disposed of her residuary estate as follows: “The trustee shall manage the estate under the name of the melville and Elizabeth Jacobs research fund and pay the income and principal thereof to whatcom museum foundation to promote and advance scientific research in the field of social and cultural anthropology among living native American people, by means of grants to qualified ‘scholars’ ”.
The two trustees disagree with regard to the disposition of the remainder interest of Elizabeth’s trust. Mr. Seidel wishes to follow testatrix’ request and dispose of the remainder interest in the manner directed by her daughter-in-law Elizabeth in her will. In an affidavit, he informs the court that he was the draftsman of decedent’s will and that Mrs. Jacobs had expressed to him her desire to devote her estate in the same manner as her daughter-in-law disposed of her estate. He states that he advised her against incorporating such a provision in her will and recommended that she instead give broad discretion to her trustees and incorporate her wishes in the separate letter of instruction previously quoted.
Mr. Seidel further informs the court that he has visited the Whatcom Museum and interviewed the officers as well as the persons designated by Elizabeth to choose her scholarship recipients. He was impressed by their devotion and learned moreover that “Elizabeth has been financing the project since Melville’s death from her personal funds and the income she received from Rose’s trust”.
Mr. Seidel accordingly recommends that the fund be appointed to the Whatcom Museum Foundation as a separate fund to be known as the Rose and Melville Jacobs Fund.
The other trustee, Joseph Isaacs, advises the court that he also has investigated the Whatcom Foundation proposal and another proposal submitted to him by the Department of Anthropology of the University of Arizona. He, however, has determined “that the worthiest recipient would be the University of Arizona”.
*1022 Mr. Isaacs does not regard Mrs. Jacob’s letter as a request. He considers it an advisory letter intended to give him and his cotrustee guidance but without interfering with the exercise of their discretion.
Included with Mr. Isaac’s affidavit is the proposal from the University of Arizona which, rather than awarding scholarships, is directed toward “improving the facilities” of the anthropology department in that State-supported institution.
The cotrustees, who refuse to compromise with each other, seek “advice and direction” from the court (see, SCPA 2101 [1]; 2102 [6]). When fiduciaries fail to agree, such a proceeding can be useful because it gives all interested persons an opportunity to be heard before a decision is made and the fiduciaries can thus insulate themselves from future criticism and even surcharge (see, Matter of Rothko, 84 Misc 2d 830, 839-842, affd 56 AD2d 499, affd 43 NY2d 305).
This however is not a proceeding in which other parties are interested. The only interested parties are the two trustees themselves. The Attorney-General of the State of New York has appeared but not taken any position.
The power to dispose of this fund is a joint power as distinguished from a several power. In general, the decisions define a joint power as one which requires the exercise of discretion (Fritz v City Trust Co., 72 App Div 532, 533, affd 173 NY 622; Matter of Ehret, 70 Misc 576, 579). On the other hand, those powers which are purely ministerial (collect assets, deposit funds of the estate in a bank, etc.) are considered several powers (Matter of Leopold, 259 NY 274, 278; Geyer v Snyder, 140 NY 394; Matter of Heubach, 165 Misc 196).
EPTL 10-10.7 discusses how these types of powers are to be exercised. A several power may be exercised by each fiduciary individually. Where there are more than two fiduciaries, a joint power may be exercised by a majority. Where there are only two fiduciaries, and the will does not contain any direction for breaking a tie vote, the consent of both fiduciaries is required to exercise a joint power. However, neither this statute nor any decision provides any guidance to the problem before the court — how to resolve a dispute between two fiduciaries who hold a joint power. In fact, the deadlock situation between the two trustees presents an issue of first impression in this jurisdiction.
Except in extraordinary circumstances (see, e.g., Matter of Chusid, 60 Misc 2d 462), the court has no power to direct trustees in whatever manner to exercise a joint power vested in their “sole discretion” by the testatrix. In fact, if such a direction *1023 were given by the court and not complied with, the court would have no power to enforce it.
Although the court lacks the authority to give direction, it may, however, give advice. When Mrs. Jacobs vested her trustees with “sole discretion”, she accompanied this power with a request that the remainder of the trust be disposed of, if practicable, “to the same organizations specified by Elizabeth in her will and upon the same terms”. This is not a situation where disagreement is the result of a choice between a worthy and an unworthy charitable organization. Both are apparently worthy organizations. Mrs. Jacobs did not direct that the trustees appoint the fund to the very best organization in the field of anthropology. Instead, because of her confidence in her daughter-in-law, she requested in a letter that, if practicable, the fund be appointed to the same organization selected by Elizabeth.
If the court were a trustee, it would respect decedent’s request and distribute the fund to the Whatcom Museum Foundation. This is the court’s advice, which as previously discussed, the trustees are not required to follow.
However, if the advice is disregarded, the only other alternative to effectuate decedent’s clear charitable purpose is for the court to appoint a third trustee, upon nomination by the present trustees, to cast a deciding vote (see, Stuart v Continental Ill. Natl. Bank & Trust Co., 68 Ill 2d 502, 369 NE2d 1262 [1977]).
The trustees are "directed to inform the court of their decision.