In the Matter of the Estate of A. WALKER OTIS, Deceased.

Surrogate's Court, New York County, March 11, 1936.

*Andrew I. Farb*, for the Bankers Trust Company, as trustee.

*Beekman, Bogue, Leake, Stephens & Black* [*Matthew M. Campbell* of counsel], for Maude D. Hendrickson, respondent.

*William Britton Stitt*, special guardian for Margaret E. Otis.

*White & Case* [*Paul G. Pennoyer, Adrian D. Stevensen* and *Charles K. Rice* of counsel], for the New York Trust Company, as *amicus curiæ*, in support of the petition of Bankers Trust Company, as trustee.

FOLEY, S. In this proceeding for the judicial settlement of its account, the trustee, the Bankers Trust Company, seeks instructions with respect to the administration of the trusts created by the will, and, specifically, with respect to the relative rights and interests of the life beneficiaries and the remaindermen of the trusts in property or its proceeds acquired by the trustee through the salvaging of defaulted mortgage investments.

The testator bequeathed his residuary estate to his trustee, to divide the same in two equal parts, to hold one of such parts in trust for his son, Harrison G. Otis, and the other part in trust for his daughter, Maude D. Hendrickson, with directions to pay the income of each trust to each of them during life, and after the death of the beneficiary to pay the principal in equal shares to his or her respective issue, with certain remainders over in default of issue.

Included among the assets received by the trustee from the executor were the following mortgages, which were allocated in equal shares to each of the trusts: (1) A mortgage for $11,000 on 439 East Two Hundred and Fortieth street, borough of the Bronx, New York city, which was foreclosed and the property against which it was a lien purchased by the trustee at the foreclosure sale. The real property was subsequently sold for less than the amount of principal and unpaid accrued interest; (2) a mortgage for $6,500 on 1925 Edenwald avenue, borough of the Bronx, New York city, which was exchanged by the trustee for bonds in the amount of $6,000 of the Federal Home Owners' Loan Corporation. These bonds were subsequently sold by the trustee and their proceeds are now in its possession; and (3) a mortgage for $11,000 on 4635 Carpenter avenue, borough of the Bronx, New York city, which was foreclosed and the property purchased at the foreclosure sale by the trustee. A sale of this property has not as yet been effected.

Certain questions have arisen involving (1) the disposition of the proceeds of the sale of the East Two Hundred and Fortieth street property; (2) the disposition of the proceeds of the sale of the Home Owners' Loan Corporation bonds acquired in exchange

for the bond and mortgage on the Edenwald avenue property; and (3) the treatment of the income received from the operation of the unsold Carpenter avenue property after the acquisition of title by the trustee.

The authorities dealing with the principles of law applicable to these situations have been cited and analyzed by counsel in their briefs with commendable thoroughness and their very able presentation of the facts and the law has been of valuable assistance to the surrogate.

Since the early case of *Meldon* v. *Devlin* (31 App. Div. 146, First Dept., decided in 1898, and affd., 167 N. Y. 573) it has been definitely established that where a trustee is compelled to foreclose a mortgage investment on which there has been a default, and to acquire title to the real property under foreclosure, an apportionment of the ultimate proceeds of the sale of such property must be made between principal and income. (*Matter of Marshall*, 43 Misc. 238; *Matter of Myers*, 161 N. Y. Supp. 1111; *Matter of Jackson*, 135 Misc. 329; affd., 232 App. Div. 425; revd. on other grounds, 258 N. Y. 281; reargument denied, Id. 610; *Matter of Ely*, N. Y. L. J. Nov. 3, 1933, p. 1608; *Matter of Pelcyger*, 157 Misc. 913, WINGATE, S.; *Matter of Chapal*, 269 N. Y. 464.)

The latest decision of the Court of Appeals, in *Matter of Chapal* (269 N. Y. 464), restated the rule recognized in *Meldon* v. *Devlin* (*supra*) and following the method of apportionment there applied, pointed out to trustees generally what should be done with the proceeds of sale of real property acquired by foreclosure. This decision has been of great advantage in the guidance of trustees, their attorneys and the courts. In his lucid opinion, Judge LOUGHRAN stated: " in such an investment situation what is involved is the salvage of a security. The security it is to be remembered is a security not for principal alone but for income as well. On a sale, therefore, the proceeds should be used first to pay the expenses of the sale and the foreclosure costs and next to reimburse the capital account for any advances of capital for carrying charges not theretofore reimbursed out of income from the property. Then the balance is to be apportioned between principal and income in the proportion fixed by the respective amounts thereof represented by the net sale proceeds. In the capital account will be the original mortgage investment. In the income account will be unpaid interest accrued to the date of sale upon the original capital. The ratio established by these respective totals determines the respective interests in the net proceeds of a sale."

In the main, the decision in *Matter of Chapal* is decisive of many of the questions in this proceeding. There remains open, however,

for determination here a number of other important problems which arose in the salvage operations involved and with respect to which no rulings have been heretofore made by the Court of Appeals. The disposition, however, of the problems presented and the rulings of the surrogate hereinafter made will be limited to the specific questions of the instructions asked and the specific property involved.

(1) As appears from the account, by reason of the default in the payment of interest, taxes and water rates, by the owner of the premises, 439 East Two Hundred and Fortieth street, the trustee was obliged to foreclose the mortgage of $11,000 held by it and to purchase the property at foreclosure sale. The deed to the premises was delivered by the referee on January 6, 1933, and the trustee thereafter held the property until it was sold on October 10, 1933, a period of about nine months. The trustee was required to pay arrears of taxes, water rates and the expenses of foreclosure. During the period of ownership of the property by the trustee, it expended additional moneys for taxes, water rates, insurance premiums, repairs and other carrying charges. It appears that no income whatsoever from the property was received during this period. The expenses were temporarily charged to principal. The property was sold for $11,900. There was deducted from the proceeds of sale the sum of $384.50 for stamps on deed, for legal fees and brokers' commissions. The net proceeds amounted to $11,515.50, of which $9,500 was received in the form of a purchase-money mortgage and the balance of $2,015.50 in cash. The trustee has now on hand the mortgage and the cash, and asks the court to determine the proper method of allocation.

With respect to this salvaging operation, I hold as follows: (a) The proceeds of the sale of the premises constitute both principal and income and should be apportioned between them. The principal is the original amount of the mortgage investment. The income is the unpaid interest accrued to the date of the sale upon the original principal. (*Matter of Chapal, supra.*) (b) The income of which the life beneficiaries of the trusts have been deprived should be computed upon the amount of the mortgage at the rate of six per cent, which is the rate reserved in the mortgage, from the date of the last interest payment by the owner of the premises to the date of the acquisition of title to the property by the trustee. Thereafter and until the sale of the property, interest is allowed at the rate which generally prevailed for legal investments during this period. Such prevailing rate I fix at four per cent. It is urged by counsel that a uniform rate of interest, which should be either the mortgage rate or the prevailing rate, be fixed for the

entire period from the date of default under the mortgage to the date of sale of the real property. While such uniform rate might simplify to some extent the administration of the estate or the process of computation, no arbitrary rule, in my opinion, should be adopted. Regard must be given to the fact that the life beneficiaries were entitled to six per cent under the mortgage and to that amount only while the mortgage was actually in existence, and that thereafter, regardless of the form which the investment might have taken, they were entitled to receive no greater return thereon than the average rate generally prevailing for legal investments. (*Matter of Marshall, supra.*) (c) Under the *Chapal* decision, before applying the ratio of apportionment, all advances of principal for the expenses of the sale of the property and the costs of foreclosure must first be deducted from the proceeds of sale. In this particular transaction the expenses of sale, as appears from the account, have been properly deducted from the proceeds. All additional advances of principal which were expended for carrying charges during the period in which the title to the property was in the trustee, must next be repaid out of the proceeds. Ordinarily the carrying charges on a parcel of property are payable out of income. But here, since there was no income whatsoever derived, the deficit of carrying charges was properly advanced out of principal. If such advances were made out of principal, they must be repaid to principal, together with interest. The decision in *Matter of Chapal*, in my opinion, does not preclude the allowance of interest on additional advances of principal necessarily made, either for foreclosure expenses or carrying charges. Certainly the life tenant should not be deprived of interest upon the funds temporarily diverted from principal. Since no income was derived from the property here, the amount of such interest on the additional advances of principal should be deducted from the gross proceeds of sale prior to apportionment. The rate of interest allowed upon these advancements will be fixed at four per cent, the rate currently prevailing for legal investments. (d) After the deduction from the proceeds of sale of the expenses of the sale, the costs of foreclosure and the advances for carrying charges, the balance of the net proceeds of sale must be apportioned between principal and income in the ratio fixed by the respective amounts of the unpaid interest and of the original principal of the mortgage. (e) Upon the sale of the Two Hundred and Fortieth street property, the trustee received, as heretofore stated, a purchase-money mortgage in the sum of $9,500 and a balance of cash of $2,015.50. The questions asked with respect to this situation are, Shall the amount apportioned to *income* and due to the life bene-

ficiaries be paid to them entirely in cash out of the cash proceeds of sale, or shall such amount be paid to the life beneficiaries partly in cash and partly by participation in the purchase-money mortgage, thus allocating proportionately to the life beneficiaries the mortgage and cash received on the sale? Shall the amount apportioned to *principal* and due to the trustee be paid to it by applying the purchase-money mortgage received on the sale of the property and the balance out of the cash proceeds of sale, or shall the amount apportioned to *principal* be allocated proportionately between the mortgage and the cash received on the sale and the principal amount credited partly by participation in the purchase-money mortgage and partly in cash?

I hold that the cash and the purchase-money mortgage received upon the sale should be apportioned between the principal and income accounts so that each will receive a proportionate share in both. (*Meldon* v. *Devlin, supra; Matter of Chapal, supra.*) It is contended on behalf of the trustee that the divided ownership of the mortgage in the trustee and in the life beneficiaries might result in such inconvenience and disadvantage that a contrary ruling by which the life beneficiaries would receive their proportionate share of the proceeds wholly in cash should be adopted. It is argued that there is here ample cash in the proceeds of sale to pay the life beneficiaries the sum due them and still leave a cash balance for principal, in addition to the purchase-money mortgage. If the contention for mere convenience of payment in full to the life tenant out of cash were adopted, improper preference might be obtained for them as against the remaindermen. Each form of asset derived from the sale must be apportioned equitably. There still remains the hazard of salvaging the new mortgage and the life tenants must continue their responsibility proportionately with the remaindermen in working out the new and substituted security. I, therefore, hold that the ratio must be applied to the cash received and that the new mortgage must likewise be equitably apportioned.

(2) Instructions are also asked as follows: Does the same method of apportionment just discussed and adopted as to the proceeds of sale of the premises 439 East Two Hundred and Fortieth street apply to the bonds of the Home Owners' Loan Corporation, received by the trustee in exchange for the mortgage of $6,500 on 1925 Edenwald avenue? I hold that it does. A default occurred in the payment of interest on the Edenwald avenue mortgage. The owner of the property then arranged for the procurement of a mortgage from the Federal Home Owners' Loan Corporation. The original mortgage was $6,500. The trustee received and sold

the bonds issued by the Federal corporation. This mortgage had been held in two equal parts in two trusts. The problem may be considered, however, from the standpoint of each separate trust. The original face value of the share of one of these trusts in the mortgage was $3,250. The net cash proceeds derived from the sale of the bonds was $2,977.59. It should be noted that there was a loss to both life tenant and remaindermen in the transaction. The trustee, in its account, has apportioned the net proceeds derived from the sale of the bonds under the same method applied in *Matter of Chapal*. The special guardian contends that the entire proceeds should be applied to principal and that there should be no allocation to the life tenants. His theory is that the transaction represented the sale of a capital asset. His contention is overruled. No distinction may be drawn, on the one hand between the foreclosure and subsequent sale of the real property by the trustee, and on the other hand between the substitution of Home Owners' Loan Corporation bonds for the original mortgage and their subsequent sale. Each form of transaction is essentially a salvage operation. The loss suffered by the life tenants in unpaid interest must be given due consideration and restored as far as equitably possible. The method of apportionment as between *cestui* and remaindermen adopted by the trustee in the account is proper and is approved by the surrogate.

On the question as to whether the apportionment should be made as of the time of the closing of the loan with the Federal government and the receipt of the bonds, or as of the time of the actual sale of the bonds, I hold that the date of sale is the date of the completion of the actual salvage operation and, therefore, the event which fixes the respective rights of the parties. The sale of the bonds may result in a loss or a profit as compared with their face values, but the actual cash receivable cannot be ascertained until the sale is made. In the pending case the period of time between receipt of the bonds and their sale was short. The rate of interest, whether that fixed in the mortgage or that actually earned upon the bonds, might be of importance, however, in fixing the ratio where a considerable period of time elapsed between the receipt of the bonds and their sale. In such a situation, it would appear that the rate fixed in the mortgage should be allowed to the life tenants to the time of the actual receipt of the bonds, and the rate of interest of three per cent actually earned upon the bonds after receipt should be allowed during the time in which the bonds were held by the trustee. I am not in accord, therefore, with the different method applied in *Matter of Pelcyger* (WINGATE, S., 157 Misc. 913), where the mortgage

rate was applied in favor of the life tenants between the date of receipt and date of sale. Since there is a ready market for these bonds, their immediate liquidation in cash should lead to a prompt ascertainment and fixation of the rights of the respective parties.

(3) The third asset of the trust concerning which instructions are asked by the trustee involves the mortgage of $11,000 on 4635 Carpenter avenue. This mortgage was foreclosed and title to the property was acquired by the trustee on January 25, 1935. The trustee paid the arrears of taxes, water rates and the other expenses of foreclosure and has spent additional moneys out of principal for the upkeep and maintenance of the real property. The property consists of a two-story brick house containing three apartments. The rents collected during the period covered by the account aggregate $355.78. The expenses of foreclosure, which properly included arrears of taxes, attorneys' fees, referee's and auctioneer's fees and advertising, amounted to $1,047.50 and were temporarily charged to principal. Additional carrying charges amounting to $246.35 have been paid since the date when title was acquired by the trustee.

Pending the sale of the property, in accordance with the rules heretofore laid down and as indicated in *Matter of Chapal* (*supra*), (a) the gross rents from the operation of the property should first be applied to the payment of current operating expenses and taxes; (b) if the gross rents should not be sufficient for that purpose, the deficit should be paid temporarily from principal; (c) if the gross rents are more than sufficient to pay the current operating expenses and taxes, the surplus rents should be applied to reimbursing the principal account for advances of principal for foreclosure expenses and carrying charges which have not theretofore been paid out of income from the property; (d) if, after the principal account has been fully reimbursed from the profits of the operation of the property, the gross rents still exceed the current operating expenses and taxes, the surplus rents should be retained in the hands of the trustee until the property is sold. Then an apportionment between principal and income should be made. It is urged that a time may arrive when the net rents will be sufficient to yield a surplus over all charges and after all advancements of principal have been repaid. It is contended that in such case the life tenants should be paid the net income of the property. It appears to me in such a situation that it would be improper to divert income to the life tenants to the possible detriment of the remaindermen. The latter are entitled to have the income withheld as part of the salvage operation until

the sale and the ascertainment as to whether the amount of principal to which they are entitled has been fully restored. The changes in the hypothetical value of real estate and the conditions which affect it would never justify the assumption that the real property had reached a position where the remaindermen were fully protected. It may appear to be a hardship to the life tenants to withhold income, but the necessity for safeguarding the rights of the remaindermen forbid a premature distribution to the life tenants. The rights of all parties must be protected. It is impossible to treat current income as actually earned income. The hazards of a loss to the remaindermen continue. Only an actual sale and the termination thereby of the salvaging operation can establish the true facts. Until a sale of the premises 4635 Carpenter avenue is had, the trustee should continue to treat it as a separate unit, retaining the excess income, if any, as security for the preservation of the respective rights of the life tenants and the remaindermen.

Serve and file corrected schedules of the account pursuant to the directions in this decision and submit decree on notice settling the account accordingly.