In the Matter of the Accounting of BANKERS TRUST COMPANY, as Trustee under the Will of A. WALKER OTIS, Deceased.

MAUDE D. HENDRICKSON, Appellant and Respondent.

WILLIAM B. STITT, as Special Guardian for MARGARET E. OTIS, an Infant, Respondent and Appellant.

BANKERS TRUST COMPANY, as Trustee, Respondent.

Argued October 4, 1937; decided November 23, 1937.

*Matthew M. Campbell* and *C. McKenzie Lewis, Jr.,* for Maude D. Hendrickson, appellant and respondent. For the purpose of fixing the ratio of apportionment of the proceeds of the salvage operation, the income should

be computed at the rate reserved in, and on the amount of, the original bond and mortgage for the entire period of the salvage. (*Matter of Chapal*, 269 N. Y. 464; *Meldon v. Devlin*, 31 App. Div. 146; 167 N. Y. 573; *Matter of Jackson*, 135 Misc. Rep. 329; 232 App. Div. 425; 258 N. Y. 281; *Matter of Pelcyger*, 157 Misc. Rep. 913; *Hagan v. Platt*, 48 N. J. Eq. 206; *Matter of Tuttle*, 49 N. J. Eq. 259; *Trenton Trust & Safe Deposit Co. v. Donelly*, 65 N. J. Eq. 119.) Where the new mortgage and cash were received by the trustee as proceeds of the salvage operation, the apportionment should be made of the proceeds as a whole and the distribution to the life beneficiary of her share should be made from the cash. (*Meldon v. Devlin*, 31 App. Div. 146; 167 N. Y. 573; *Parsons v. Winslow*, 16 Mass. 361.) All advances from principal during the salvage should bear interest at the rate prevailing for legal investments and such interest should be paid currently from the income of the property. (*Matter of Pelcyger*, 157 Misc. Rep. 913.) Rents from the realty acquired by the trustee because of the salvage, net after repayment of carrying charges incurred during the ownership, should be paid periodically to the life beneficiary on account of her ultimate distributive share. (*Matter of Chapal*, 269 N. Y. 464; *Bankers Trust Co. v. Willis*, 248 App. Div. 753; *Matter of Pelcyger*, 157 Misc. Rep. 913; *Matter of Crimmins*, 159 Misc. Rep. 499; *Matter of McKeogh*, 158 Misc. Rep. 734.) In the case of the mortgage exchanged for Home Owners' Loan Corporation bonds, the salvage should be terminated at the closing of the Home Owners' Loan Corporation loan. (*Matter of Pelcyger*, 157 Misc. Rep. 913.)

*William Britton Stitt*, as special guardian for Margaret E. Otis, an infant, respondent and appellant. The rate of interest to be used in fixing the ratio of apportionment should be the prevailing rate of interest for legal investments, applied uniformly from the date of default to the date of ultimate liquidation upon the final sale of fore-

closed property. (*Matter of Chapal*, 269 N. Y. 464; *Lawrence v. Littlefield*, 215 N. Y. 561; *Matter of Marshall*, 43 Misc. Rep. 238.) Both the cash and the purchase-money mortgage received upon the ultimate sale of the foreclosed property should be apportioned between the principal and income accounts so that each will receive a proportionate share in both. (*Matter of Chapal*, 269 N. Y. 464; *Meldon v. Devlin*, 31 App. Div. 146; 167 N. Y. 573; *Matter of Pelcyger*, 157 Misc. Rep 913.) For the purposes of apportionment the income account should not be credited with interest on the amount of advances made from principal during the salvage operation. (*Matter of Chapal*, 269 N. Y. 464; *Matter of Pelcyger*, 157 Misc. Rep. 913.) Surplus rents received from the property during the salvage operation (net after the payment of carrying charges and reimbursement of principal advances) should be accumulated until the completion of the salvage operation. (*Matter of Chapal*, 269 N. Y. 464; *Matter of Crimmins*, 159 Misc. Rep. 499; *Matter of McKeogh*, 158 Misc. Rep. 734.) The Home Owners' Loan Corporation bonds received in exchange for the defaulted bond and mortgage were not acquired in a salvage operation; the proceeds of the sale of such bonds belong to principal; and no apportionment thereof between principal and income accounts should be made. (*Matter of Chapal*, 269 N. Y. 464; *Meldon v. Devlin*, 31 App. Div. 146; 167 N. Y. 573; *Matter of Moore*, 54 L. J. Ch. 432; *Hagan v. Platt*, 48 N. J. Eq. 206; *Matter of Hagen*, 262 N. Y. 301; *Stewart v. Phelps*, 71 App. Div. 91; 173 N. Y. 621; *Matter of New York Life Ins. & Trust Co.*, 24 Misc. Rep. 71; *Matter of Dwight*, 171 Atl. Rep. 757; *Matter of Penn-Gaskell*, 208 Penn. St. 346; *Matter of Graham*, 198 Penn. St. 216; *Miller v. Payne*, 150 Wis. 354; *Matter of United States Trust Co.*, 190 App. Div. 494; *Matter of Edgar*, 157 Misc. Rep. 10.)

*Andrew I. Farb* for Bankers Trust Company, as trustee, respondent. In setting up the ratio of apportionment,

interest on the original capital should be computed (A) from the date to which interest had been paid by the owner to the date of acquisition of title by the trustee at the rate reserved in the mortgage, and (B) from the date of acquisition of title to the date of sale at the rate of interest generally prevailing on legal investments during such period. (*Matter of Chapal,* 269 N. Y. 464; *Metropolitan Life Ins. Co.* v. *Childs Co.,* 230 N. Y. 285; *Matter of Marshall,* 43 Misc. Rep. 238; *Lawrence* v. *Littlefield,* 215 N. Y. 561; *Matter of Nirdlinger,* 26 D. & C. [Pa.] 3; *Matter of Pelcyger,* 157 Misc. Rep. 913.) The amount apportioned to income should be paid to the income account in cash out of the cash proceeds of sale; if the cash is insufficient, the balance should be paid from other cash principal on hand, or temporarily by a participating interest in the purchase-money mortgage, to be a lien on the principal funds and to be paid out of the first cash principal funds on hand. The amount apportioned to principal should be paid by transferring the mortgage (or the balance thereof) to the principal account. (*Matter of Nirdlinger,* 26 D. & C. [Pa.] 3; *Matter of Pelcyger,* 157 Misc. Rep. 913; *Matter of Gilbert,* 176 App. Div. 850; *Matter of New York Title & Mortgage Co.,* 160 Misc. Rep. 67.) Interest at the rate prevailing on legal investments should be allowed as an operating expense on moneys advanced out of principal for foreclosure expenses and carrying charges. Such interest should be paid out of income derived from the property at the time of the repayment of such advances or thereafter, and in the absence of such income, from the proceeds of sale prior to making the apportionment. (*Matter of Pelcyger,* 157 Misc. Rep. 913; *Matter of Schmutz,* 159 Misc. Rep. 454; *Matter of Nirdlinger,* 26 D. & C. [Pa.] 3.) The surplus rents remaining after the principal account has been fully reimbursed for all advances should be partially distributed to the life beneficiaries subject to final adjustment after the sale of the property. (*Matter of Chapal,* 269 N. Y. 464; *Matter of Pelcyger,* 157 Misc.

Rep. 913; *Meldon* v. *Devlin*, 31 App. Div. 146; 167 N. Y. 573; *Matter of Marshall*, 43 Misc. Rep. 238; *Matter of Myers*, 161 N. Y. Supp. 1111; *Furniss* v. *Cruikshank*, 230 N. Y. 495; *Matter of Crimmins*, 159 Misc. Rep. 499.) The Surrogate correctly held that the proceeds of sale of the Home Loan bonds should be apportioned on the same basis as the proceeds of sale of foreclosed property. Such apportionment, however, should be made as of the date of the closing of the Home Loan, and not as of the date of the sale of the bonds. (*Matter of Chapal*, 269 N. Y. 464; *Jessewick* v. *Abbene*, 154 Misc. Rep. 768; *Matter of Pelcyger*, 157 Misc. Rep. 913; *Veazie* v. *Forsaith*, 76 Me. 172; *Matter of Colket*, 20 Wkly. N. C. [Pa.] 71; *Matter of Taylor*, [1905] 1 Ch. 734; *Cox* v. *Cox*, L. R. 8 Eq. Cas. 343; *Parsons* v. *Winslow*, 16 Mass. 361; *Greene* v. *Greene*, 19 R. I. 619; *R. I. Hospital Trust Co.* v. *Tucker*, 52 R. I. 277; *Quinn* v. *First Nat. Bank*, 73 S. W. Rep. [2d] 692.)

*Thomas B. Fenlon, Albert Stickney, John E. Lockwood, W. H. Gambrell, C. Alexander Capron, Kendall M. Barnes, Leon Schaefler, William A. W. Stewart* and *Thomas C. Burk* for Bank of New York and Trust Company *et al.*, *amici curiæ*. If upon a sale by the trustee of foreclosed property, the proceeds of sale are paid to the trustee partly in cash and partly by the execution of a purchase-money mortgage, the cash received should, so far as possible, be used to satisfy the sum due to the life beneficiary. The whole purchase-money mortgage should be retained by the trustee, notwithstanding the fact that the life beneficiary, upon the liquidation thereof, may be entitled to part of the proceeds. (*Matter of Pelcyger*, 157 Misc. Rep. 913.) If the parcel of real property is productive of income, such income should be deemed to be income of the trust estate. It should be distributed as is other income, subject, however, to the exercise of sound discretion by the trustee as to whether the protection of the property requires that a portion of such income should be reserved to meet expenses

subsequently accruing. (*Matter of Chapal*, 269 N. Y. 464.) In apportioning the proceeds of sale of property acquired on foreclosure of a mortgage, the amount of deferred income deemed to be invested therein should be computed as follows: (a) Interest in default should be computed at the rate provided in the mortgage up to the date of the entry of the judgment of foreclosure and sale; (b) thereafter, interest should be computed at such rate as would have been earned by the trustee had the property been sold and the proceeds invested in a proper trustee's investment. (*Matter · of Jackson*, 135 Misc. Rep. 329; 232 App. Div. 425; 258 N. Y. 281.) If sums are advanced out of the capital of the trust to pay the expenses of foreclosure and carrying charges, the life beneficiary is entitled to interest thereon at such rate as might have been earned on trust investments from the date the capital of the trust estate is thus employed. Such interest should be paid to the life beneficiary out of any income derived from the property, and, if the property is not productive of sufficient income, the trustee should be authorized to treat such interest as a further carrying charge to be advanced out of the capital of the trust estate (*Matter of Chapal*, 269 N. Y. 464; *Matter of Pelcyger*, 157 Misc. Rep. 913.) If a trustee exchanges a bond and mortgage for bonds of the Home Owners' Loan Corporation, such bonds should be apportioned between principal and income in the same manner as the trustee would be required to apportion the proceeds of sale of such bond and mortgage if the same were sold by him. The liquidation of such bond and mortgage should be deemed complete upon the trustee's receiving an authorization for such bonds. It should not be necessary for the trustee to sell such bonds in order to complete such liquidation. (*Matter of Pelcyger*, 157 Misc. Rep. 913.)

*Otis T. Bradley* and *Logan Fulrath* for Guaranty Trust Company of New York, *amicus curiæ*. In computing

the total unpaid interest as one of the bases to establish the ratio for the apportionment, the rate of interest stipulated in the bond and mortgage (and in the case of guaranteed mortgages the net rate payable to the trustee) should be used throughout from the date to which interest was last paid to the date of sale of the property acquired on foreclosure. (*Meldon* v. *Devlin*, 31 App. Div. 146; 167 N. Y. 573; *Matter of Moore*, 54 L. J. Ch. 432; *Hagan* v, *Platt*. 48 N. J. Eq. 206; *Matter of Pelcyger*, 157 Misc. Rep. 913; *Furniss* v. *Cruikshank*, 230 N. Y. 495.) Where the proceeds of sale are represented partly by cash and partly by bond and purchase-money mortgage such proceeds should be apportioned between principal and income as of the date of sale. (*Matter of Nirdlinger*, 26 D. & C. [Pa.] 3.) Interest should be allowed on moneys advanced from the principal of the trust to pay acquisition costs and operating deficits. (*Matter of Chapal*, 269 N. Y. 464; *Furniss* v. *Cruikshank*, 230 N. Y. 495.) Any net rents arising from the operation of the foreclosed property until sold, after payment from gross rents of current expenses, advances from principal and interest thereon, should be payable by the trustee in the exercise of discretion on account of the amount which eventually should be allocated to income. (*Matter of Chapal*, 269 N. Y. 464; *Matter of Crimmins*, 159 Misc. Rep. 499.) Upon an exchange of a defaulted mortgage for Home Owners' Loan Corporation bonds the realization represented by the bonds should be apportioned between principal and income, if at all, as of the date of the closing of the loan. (*Matter of Chaval*. 269 N. Y. 464.)

*Adrian D. Stevenson* and *Maurice E. McLoughlin* for New York Trust Company, *amicus curiæ*.

LOUGHRAN, J. This case presents afterparts of the problem dealt with in *Matter of Chapal* (269 N. Y. 464).

In that case testamentary trustees had acquired several parcels of unproductive real property through the fore-

closure of mortgages in which they had invested pursuant to authority conferred by the will of their testator. It was assumed by the parties that each parcel would ultimately be liquidated by a sale for all cash, with loss to both principal and income. The question was how in that event the respective interests of life tenant and remaindermen were to be adjusted.

We there approved the ruling of the courts below that the properties so acquired were to be treated by the trustees as separate units, with the result that a deficit of carrying charges pending sale of any parcel was to be advanced out of principal. The Surrogate had decreed that the proceeds of a sale should be allocated between principal and income. The Appellate Division had ordered that the sale proceeds should be returned to the capital account in every instance. In reversing that direction of the Appellate Division we said: " In such an investment situation what is involved is the salvage of a security. The security it is to be remembered is a security not for principal alone but for income as well. On a sale, therefore, the proceeds should be used first to pay the expenses of the sale and the foreclosure costs and next to reimburse the capital account for any advances of capital for carrying charges not theretofore reimbursed out of income from the property. Then the balance is to be apportioned between principal and income in the proportion fixed by the respective amounts thereof represented by the net sale proceeds. In the capital account will be the original mortgage investment. In the income account will be unpaid interest accrued to the date of sale upon the original capital. The ratio established by these respective totals determines the respective interests in the net proceeds of a sale. Since that matter has not been argued before us, we do not fix the rate at which interest is to be computed " (269 N. Y. at pp. 472–473).

(1) The question thus left open must be decided now. The Appellate Division has here affirmed the ruling of the

Surrogate that unpaid interest is to be computed at the mortgage rate (six per cent) up to foreclosure and thereafter to the date of final sale " at the rate which generally prevailed for legal investments during this period." Such trust rate was found to have been four per cent. (158 Misc. Rep. 808, 812.)

We prefer to adhere to our ruling in *Meldon* v. *Devlin* (167 N. Y. 573; affg., 31 App. Div. 146) that interest should be computed at the mortgage rate for the whole period. It is true, as the Surrogate has said, that the mortgage had no existence after it had been foreclosed. Equally is it true, however, that the foreclosure put an end to " the original mortgage investment." Both capital account and income account, as described in the *Chapal* case, are fictions. Doubtless the completely fair thing to do would be to ascertain the market value of the mortgaged premises by appraisal more or less continuous through the period from initial default to liquidation of the property and to give the life tenant interest at the mortgage rate on the value so ascertained currently. We think the difficulties of such a course would be too many. (Cf. *Heiman* v. *Bishop*, 272 N. Y. 83.) If, then, the remaindermen are to participate in the apportionment on the feigned basis of unimpaired principal, the share of the life tenant should be computed on the same assumption. The invention of the " original investment " is no more valid than the invention of " unpaid interest " thereon. Indulgence in both fictions keeps the balance even between the respective parties in interest.

(2) The next question is whether the life tenant should have interest on advances made from principal for foreclosure expenses and for carrying charges. It has been held below that the amount of such interest should be deducted from the gross sale proceeds before apportionment is made.

We think this gives the life tenant too much. The parties, so we have said, are engaged in a joint salvage venture. Carrying charges must be met from principal

because there is no income wherewith to pay them. These items (*e. g.*, taxes, water rents, insurance premiums and repair costs) accrue from time to time during the salvage operation. Interest on each item would have to be computed at the currently prevailing rate for legal investments — a fluctuating factor not always readily ascertainable. The parties can hardly be thought to have contemplated such actuarial calculations. In view of all this — and of the fact that the remaindermen here run by far the greater hazard — we think the life tenant must be supposed to have said to them, " You put up all the money for the salvage, and I won't expect any interest on it." In short, as was said in *Matter of Chapal:* " In the income account will be unpaid interest accrued to the date of sale upon the original capital " (269 N. Y. at p. 473).

(3) In the *Chapal* case, as we have noticed, a liquidation of the property by a sale for all cash was taken for granted. On one of the sales here involved the trustee received a purchase-money mortgage in part payment. It happens that the cash paid was in excess of the life tenant's share of the net proceeds. Even so, we are in accord with the ruling of the Surrogate who settled this account — " that the ratio must be applied to the cash received and that the new mortgage must likewise be equitably apportioned." (158 Misc. Rep. 808, 814.) We do not see how anything else can fairly be done except in a case in which it is conceded that the purchase-money mortgage meets the statutory test of a valid new investment.

(4) This trustee exchanged one of its defaulted mortgages for bonds of the Home Owners Loan Corporation. Sale of the bonds resulted in a loss to both principal and income. The sale proceeds " were apportioned to principal and income in the ratio which the total principal invested in the mortgage bore to the total interest due thereon." This treatment of that transaction by the trustee has been approved by the courts below. We think the principle of our decision in the *Chapal* case should not be thus extended.

In times of depression a defaulted mortgage is generally as unsalable as is the land on which it is a lien. It is because of that fact that the position of a trustee in the handling of defaulted mortgage investments has had of late its unique features. The result has been that in many cases the trustee had no choice but to take over the property on foreclosure and to carry it pending a sale. This was the case presented in *Matter of Chapal* —" that of the liquidation of real estate acquired of necessity because of default on a mortgage investment." (269 N. Y. at p. 472.)

The general situation is different when a trust security other than a mortgage investment goes into default. A market then exists in which bids for the defaulted security are currently quoted. No carrying period is inherent in the process of liquidation in that case. Transfer of such a security by a trustee for a consideration paid in cash (or in cash plus securities lawful for trustees) is a sale or exchange of a capital asset. It is not a salvage operation. The sale proceeds go to the capital account and any loss of principal is charged thereto. Should the business soundness or propriety of the transaction be questioned in any aspect, that is a matter for consideration upon the settlement of the trustee's account. We think the same practice should be followed where a trustee transfers a defaulted mortgage for cash or for securities which square with the statutory measure of a valid trust investment.

In this view, there should here have been no apportionment of the proceeds of sale of the bonds of the Home Owners Loan Corporation. Those bonds were lawful for trust investments (Decedent Estate Law [Cons. Laws, ch. 13], § 111; Banking Law [Cons. Laws, ch. 2], § 239, subd. 16; Real Property Law [Cons. Laws, ch. 50], § 278.) The social policy of the Federal law which in this instance adventitiously made possible the substitution of the bonds for the mortgage did not alter the essential business nature of the transaction as an exchange of the one security for the other.

(5) The courts below have held that net rents of a property acquired by a trustee through foreclosure cannot be treated as distributable income until the original capital has been fully restored. This means that, although a surplus remains after payment of carrying charges and of advances made out of principal, the life tenant can have nothing until the property is sold. We cannot take that view. " The equities of a life tenant to receive the whole income that may accrue during his tenancy are every whit as great as that of the remaindermen to have the *corpus* of the trust preserved unimpaired." (CULLEN, J., in *Matter of Rogers*, 22 App. Div. 428, 436; 161 N. Y. 108.) On this phase of the problem, we prefer the view of the Surrogate whose decree was before us in *Matter of Chapal*, that is to say, that the trustee may distribute such surplus income in its discretion. (269 N. Y. at p. 470.) This discretion, moreover, should be exercised with appropriate regard for the fact that unless a life tenant gets cash he does not get anything in the here and now.

The foregoing disposes of the issues presented.

Perhaps it should be added that a general rule for such situations cannot be attained at a bound, that no rule can be final for all cases and that any rule must in the end be shaped by considerations of business policy. Accordingly, we have here put aside inadequate legal analogies in the endeavor to express fair, convenient, practical guides that will be largely automatic in their application. Only the sure result of time will tell how far we have succeeded.

The order of the Appellate Division should be reversed and the decree of the Surrogate modified in accordance with this opinion, and as so modified affirmed, without costs.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, FINCH and RIPPEY, JJ., concur.

Ordered accordingly.