In the Matter of the Estate of TECLA J. EAGLE, Deceased.

Surrogate's Court, New York County, August 11, 1938.

*William C. Mayer*, for the accountant, The New York Trust Company, surviving executor, petitioner.

*Marshall, Bratter & Seligson*, for Edward M. Bratter, interested as assignee of Dallett H. Wilson, deceased, executor, etc., of decedent.

*Charles T. Lark*, for R. Theodora Thurmond, legatee.

*Rodney T. Martinsen*, for the Norwegian Consul General at New York and others, for The Norwegian Children's Home Association of New York, and for The Norwegian Lutheran Deaconesses' Home and Hospital.

*Rabenold, Scribner & Miller*, for Fanny M. Gudewill, legatee.

*Hartman & Hartman*, for Esther E. Wilson, executrix, etc., of Dallett H. Wilson, deceased.

*Ira H. Holley*, special guardian.

FOLEY, S. In this accounting proceeding the executors seek instructions as to the disposition of the payments' received on mortgage certificates which they hold. This estate owns group mortgage certificates having a face value of $235,000 in sixteen different series. A trustee for the benefit of certificate holders was appointed by the Supreme Court. The trustee has made certain payments on account to the executors as certificate holders.

Many of the underlying mortgages have been redeemed or exchanged for bonds of the Home Owners' Loan Corporation. In two of the series in which the executors hold certificates property has been acquired through foreclosure or by deed in lieu of foreclosure. The executors ask instructions as to whether the partial payments received from the trustee should be apportioned between principal and income in accordance with the rule set forth in *Matter of Otis* (276 N. Y. 101) and *Matter of Chapal* (269 id. 464). The executors state that they believe there should be no apportionment in those series where the underlying mortgages were redeemed or exchanged for the bonds of the Home Owners' Loan Corporation. They propose an apportionment of the partial payments made on the certificates in the two series where property was acquired by the trustee.

I hold that there should be no apportionment in accordance with the Chapal-Otis rule of the partial payments made by the trustee appointed by the Supreme Court. There is no salvage operation in which the executors are engaged. The participating certificates in the group mortgages are not true mortgage investments. In *Matter of Stupack* (274 N. Y. 198, 205, 206) in describing the nature of group mortgage certificates and the rights of the holders, Judge LEHMAN stated: " In consequence of those and other provisions, the interest acquired by those who invest in the certificates is, at most, an incomplete or conditional share in the bonds and mortgages. * * * In that case our task was to determine the jural relations and rights created by the written agreement embodied in the participation certificates. We were free to disregard the labels applied by the parties to the agreement and to provide our own description and classification of these rights and obligations based, not on the labels, but on the nature of the obligations and the rights granted. These jural relations, we pointed out, were not accurately described in the certificates. In form, each certificate purported to assign a share in a group of mortgages. In fact the holder of the certificate did not become the owner of a share in the group of mortgages deposited with the bank or trust company, for the insurance company retained a right to substitute other mortgages for the mortgages so deposited.

We found that the rights of certificate holders are more nearly analogous to the rights of a holder of collateral security than to the rights of an owner of a part or share in the mortgages deposited." In *Matter of People* (*Tit. & Mtge. Guar. Co.*) (264 N. Y. 69, 88), where Judge LEHMAN was again describing the rights of certificate holders, he stated: " So construed, the guaranty company is a primary debtor, assigning the mortgages only as collateral security for the debt."

Under these decisions, the holders of such certificates are primarily creditors of the issuing company. There is security for the debt but the security cannot be seized by the creditor. In a true mortgage investment the mortgagee may seize the real property which secures the debt when a default occurs. In *Matter of Chapal* and *Matter of Otis* (*supra*) the Court of Appeals pointed out that a mortgage owned by a trustee is security for the payment of the income as well as the principal. Under the Chapal-Otis rule the proceeds of the liquidation of the security are apportioned between principal and income. Where a fiduciary owns participating certificates in group mortgages there is no security which he may reach and sell. There can be no salvage operation and there is nothing to apportion. The Chapal-Otis rule of salvage and apportionment applies to only true mortgage investments. In *Matter of Otis* the Court of Appeals pointed out (at p. 114): " The general situation is different when a trust security other than a mortgage investment goes into default. A market then exists in which bids for the defaulted security are currently quoted. No carrying period is inherent in the process of liquidation in that case. Transfer of such a security by a trustee for a consideration paid in cash (or in cash plus securities lawful for trustees) is a sale or exchange of a capital asset. It is not a salvage operation. The sale proceeds go to the capital account and any loss of principal is charged thereto."

The trustee appointed by the Supreme Court for the benefit of the certificate holders is really acting as a liquidator of the underlying mortgages. The payments made by him to the executors are somewhat analogous to liquidating dividends which are paid on the dissolution of a corporation. Such dividends as represent the sale of capital assets should remain in the capital account. If any of such dividends represent income or the sale of assets in which income was invested they would be payable to income. It may be that the trustee will acquire and pay income earmarked as such. Periodical payments on arrears in income on the certificates have been made from time to time.

If partial payments on participation certificates were to be apportioned under the rule in *Matters of Chapal and Otis*, fiduciaries would be tremendously overburdened with a mass of detailed work in small estates or even in sizeable estates holding group certificates of small face value. The difficult and the attendant burdensome method of computation alone would not be sufficient for the court to refuse to make such an apportionment. But the Court of Appeals has already indicated in *Matter of Otis* (*supra*) that a salvage operation, which is merely a fiction, should be as free from complications as possible. It is obvious that if each payment made on a participation certificate were to be apportioned such apportionment would be extremely complicated and involved in every case. The underlying mortgages might be liens upon more than one hundred separate parcels of realty, as was the case in the Series F-1 certificates of the New York Title and Mortgage Company commented upon in *Matter of Stupack* (*supra*). (*Matter of New York Title & Mortgage Co.*, 153 Misc. 858.)

I hold that the remainder of the trust created by the twenty-third paragraph, of the will must be distributed to the persons who are entitled to the residuary estate. This remainder passes directly to such persons as though they were named as remaindermen. (*Matter of Reynolds*, 242 N. Y. 389.) The remainder is not given to the residuary estate as in *Matter of Title Guarantee & Trust Co.* (195 N. Y. 339), but to such persons who are named residuary legatees as in *Matter of Reynolds* (*supra*).

I am constrained to hold that the indebtedness due the estate by the general legatee, as evidenced by her receipt, must be set off against the legacy given to her. The attempted discharge of this obligation by the decedent cannot be given effect. (*Leask* v. *Dew*, 102 App. Div. 529; affd., 184 N. Y. 599; *Dimon* v. *Kerry*, 54 App. Div. 318.) The legacies to the Norwegian charities may be paid by the executors.

Submit decree on notice construing the will and settling the account in accordance with this decision.