In the Matter of the Accounting of MINNIE J. RENN, as Trustee, and President and Directors of the Manhattan Company, as Substituted Cotrustee, of a Trust for the Benefit of MINNIE J. RENN and Remaindermen under the Will of JULES J. RENN, Deceased.

In the Matter of the Accounting of President and Directors of the Manhattan Company, as Substituted Trustee of a Trust for the Benefit of FRANKLYN G. RENN and Remaindermen under the Will of JULES J. RENN, Deceased.

Surrogate's Court, Bronx County, June 5, 1943.

*Joseph J. Kozinn* for trustee and substituted trustee.

*Jacob Katz,* special guardian.

HENDERSON, S. These are proceedings for the judicial settlement of the accounts of trustees. In the petitions, the trustees request instructions as to whether or not the proceeds of the sale of premises 154 East 175th Street, borough of The Bronx, New York City, which form a part of the assets of the trusts, should be apportioned and allocated in accordance with the principles laid down in *Matter of Chapal* (269 N. Y. 464) and *Matter of Otis* (276 N. Y. 101).

There is no dispute as to the facts. The aforementioned realty was owned by the testator who died on August 1, 1923. It became a part of the testator's residuary estate, which, by

the terms of the testator's will, was devised to trustees to pay the income therefrom in certain portions to his daughter and his wife during the life of his wife. Upon the termination of this estate for the life of the widow, the trust was directed to be divided into two separate parts and continued for the benefit of his son, Franklyn G. Renn, and his daughter, Minnie J. Renn, respectively, with remainders over.

On January 3, 1925, this realty was sold by the former trustees of the trusts and as a part of the purchase price, a purchase-money mortgage was taken. Upon the death of the widow on October 22, 1926, the two separate trusts were set up pursuant to the directions of the testator, and an undivided one half of such mortgage was allocated to each trust.

On or about November 1, 1933, because of arrears in the payment of taxes, an agreement was entered into with the owner of the premises whereby the trustees accepted a deed in lieu of instituting foreclosure proceedings. The premises were thereafter actively operated by one of the cotrustees. The carrying charges and expenses in connection with the management of the property exceeded the income and advances were made from principal. No interest on the mortgage investment was ever paid from January 1, 1933, to the date of the resale of the premises in 1936, as hereinafter related.

On June 30, 1936, and during the pendency of proceedings by the former corporate trustee for leave to resign and to judicially settle its accounts, this property was sold for $47,000 of which $6,000 was in cash and $41,000 consisted of a purchase-money mortgage. The trustees of each trust received an undivided one-half interest in the mortgage and one half of the cash consideration. A supplemental affidavit with schedules was thereupon filed in the accounting proceeding, setting forth the transactions of the trustees relating to the sale. A recital was made in the supplemental schedules of the execution of an instrument by Minnie J. Renn and Franklyn G. Renn, daughter and son of the deceased and the respective beneficiaries of the two trusts, on the 20th day of July, 1936, which reads as follows:

"I, * * *, interested as life beneficiary, hereby consent that the principles of apportionment applied to the proceeds of foreclosed mortgages shall not be applied to the purchase money mortgage and cash received on the sale in June 1936 of property known as 154 East 175th Street, Bronx, New York, forming one of the assets of the trusts for my benefit under the Will of the above named decedent.
Dated: July 14, 1936."

A decree judicially settling the former trustees' accounts and accepting the resignation of the corporate trustee was thereupon entered. The decree, among other things, directed the distribution of the mortgage, as *principal,* to the successor trustees, one-half share allotted to each trust.

There has never been an apportionment in accordance with the legal principles relating to the proceeds of foreclosed mortgages.

The beneficiary of each trust now contends that the waiver executed by each of them is void because it transferred the income of the trust to the corpus in violation of the provisions of section 15 of the Personal Property Law; that the former decree is not *res judicata* as to the rights of the parties in the proceeds of the sale of the realty.

The first contention of the beneficiaries may be disposed of by a consideration of the nature of the rights granted to income and principal accounts in salvage proceeds.

Although the proceeds of the sale were received prior to the decision of the Court of Appeals in *Matter of Chapal* (269 N. Y. 464), the method of apportionment described by that court in its opinion was not new or novel, but has been, in fact, long established. (*Matter of Chapal, supra,* p. 473.) Based upon this established method of apportionment, rules were worked out to meet the emergency resulting from widespread foreclosures. Concerning these rules the Court of Appeals has stated: " Both capital account and income account, as described in the *Chapal* case are fictions. * * * The invention of the ' original investment ' is no more valid than the invention of ' unpaid interest ' thereon. Indulgence in both fictions keeps the balance even between the respective parties in interest." (*Matter of Otis,* 276 N. Y. 101, 112, *supra.*)

" The *res, i. e.,* the salvage proceeds, is at all times owned wholly and exclusively by the fiduciary. There is no tangible property interest in the *res* as such inuring to the income beneficiary or to the remainderman. What each of these persons has is only the right (exercised in an accounting or other appropriate proceeding) to have the fiduciary properly allocate the money or property in his hands. That right in an appropriate case may be assignable, but does not rise to the status of a title to the *res* or to any portion of it." (*Matter of Martin,* 165 Misc. 597, 609.)

In the light of the foregoing comments it is at once apparent that there has been no assignment by the beneficiaries in violation of section 15 of the Personal Property Law.

Upon the issue of *res judicata*, it is urged by the beneficiaries that the former decree does not estop them from questioning the failure of the trustees to apportion the proceeds of sale because no question was raised either by petition or objections, and, therefore, no determination with respect to such apportionment was necessary to the settlement of the account; that the account was rendered to enable the corporate trustee at that time to resign and so only the correctness of the receipts and disbursements of the outgoing fiduciary was necessary to be determined under such circumstances.

In determining the question of *res judicata* it is first necessary to ascertain what has been adjudicated by the decree heretofore entered. Every decree judicially settling a fiduciary's account is conclusive as to all matters embraced therein against every person of whom jurisdiction was obtained (Surrogate's Ct. Act, §§ 80, 274).

An examination of the former decree discloses that in both the recitals and decretal portions thereof, reference is made to the supplemental affidavit and schedules in which the transaction of the sale is taken up in detail and in which reference is made to the instruments now sought to be withdrawn by the beneficiaries. The decree contains the usual summary statement and reference is made therein to the purchase-money mortgage, as *principal* in the hands of the trustees. After fixing amounts for commissions and after providing for certain payments, the decree directed a transfer to the successor trustees of the balance of principal remaining in their hands, and as part of the principal, the decree directs the transfer of this mortgage.

Furthermore, it must be borne in mind that at the time when the sale of the premises was made by the trustees, liquidation was complete and a distribution of the proceeds of sale was necessary. (*Matter of Otis*, 276 N. Y. 101, 113, *supra; Matter of Marshall*, 43 Misc. 238, 245.) The time had then arrived when apportionment of the proceeds was possible. Something more than a mere determination of receipts and disbursements was now necessary. There was a fund which was distributable and the trustee was obliged to distribute it properly. Moreover, the future proper management of the trust necessitated a determination of the rights of all parties interested in such fund. The beneficiaries were aware of the trustees' obligation to allocate properly when the proceeds of sale were brought into their accounts. With full knowledge of their rights, each beneficiary executed an instrument for which no consideration was neces-

sary (*Clark* v. *West*, 193 N. Y. 349, 360, 361), unreservedly consenting that the principles of apportionment shall not be applied. In reliance upon such affirmative act, allocation of the proceeds was not made, but the proceeds of sale were distributed as principal to the successor trustees for the purposes of the trusts. To hold that the beneficiaries may now avoid the effect of their acts and the effect of the former decree would result in confusion in the administration of estates.

The former decree must be held to be *res judicata*. (Surrogate's Ct. Act, §§ 80, 274; *Hochster* v. *City Bank Farmers Trust Co.*, 260 App. Div. 712, 719.)

The method of apportionment of the proceeds of sale of the Long Island property is approved.

Submit separate decrees accordingly, giving notice of settlement to the special guardian in the proceeding in which he has appeared.