REBECCA ELIZABETH HOCHSTER, Respondent, v. THE CITY BANK FARMERS TRUST COMPANY, JEANNETTE HAHLO, ADAM C. KING, ALBERT J. SELIGSBERG and THE CENTRAL HANOVER BANK AND TRUST COMPANY, Appellants.

First Department, December 13, 1940.

*Harter F. Wright* of counsel [*Duer, Taylor, Wright & Woods,* attorneys], for the appellants City Bank Farmers Trust Company, Adam C. King, Albert J. Seligsberg and Central Hanover Bank and Trust Company.

*James F. Donnelly* of counsel [*Olvany, Eisner & Donnelly,* attorneys], for the appellant Jeannette Hahlo.

*Gilbert J. Fortgang* of counsel [*Milton Solomon,* attorney], for the respondent.

CALLAHAN, J. These are appeals by defendants from two orders of Special Term which denied two separate motions to dismiss the complaint herein under rules 106 and 107 of the Rules of Civil Practice, and for judgment on the pleadings under rule 112 of the Rules of Civil Practice. The appeals present two principal issues: (1) Whether the complaint sets forth facts sufficient to constitute a cause of action, and (2) whether an existing decree of the Surrogate's Court, Westchester County, is *res judicata.*

The complaint alleges that plaintiff is the surviving spouse of William Rice Hochster, who died on November 1, 1933, leaving a last will and testament, executed October 20, 1933, which was admitted to probate in the Surrogate's Court, Westchester County, on January 16, 1934. The individual defendants, other than Jeannette Hahlo and City Bank Farmers Trust Company, qualified as executors under the will. The complaint states that by the provisions of the will plaintiff was bequeathed less than her statutory share of her husband's estate. She duly exercised her right of election under section 18 of the Decedent Estate Law, and

was eventually awarded a sum representing a one-half interest in the estate. Thereafter the executors filed a final account, which was settled by a decree of the surrogate. In that account one of the schedules attached thereto showed that certain property consisting of two specific *inter vivos* trusts created by decedent in his lifetime had not passed through the hands of the executors. Plaintiff received no part of said property, although she now claims she was entitled thereto and that she made due demand upon the executors therefor.

The complaint then describes the two *inter vivos* trusts which were created by decedent under two indentures, wherein he, as settlor, appointed the predecessor of the defendant, The City Bank Farmers Trust Company, as trustee. One of these indentures was executed in 1924 and the other in 1927. The instruments creating these trusts both provided that the settlor had the right to withdraw property from and add property to the trusts, and that the trustee might not change any investment without the settlor's consent. In both trusts power was reserved in the settlor to revoke the same. The 1924 indenture provided that the income was to be paid to the defendant Jeannette Hahlo as long as she and the settlor lived, and that the principal was to be paid to the survivor of them. The 1927 trust indenture provided that during the lifetime of the settlor and defendant Hahlo, the income was to be paid to the settlor, and upon his death to Jeannette Hahlo for life, and on her death the principal was to be distributed to decedent's nephew and niece, or their descendants.

The complaint then avers in paragraph " 17 " thereof: " That the trusts established by the above-described instruments were essentially illusory transfers of property by the decedent during his lifetime and the decedent reserved such extensive power of control over the property contained in the said trusts that he was substantially the owner thereof during his lifetime; that the property was part of the estate of the decedent at the date of his death and subject to the claims of his surviving spouse, the plaintiff herein."

In paragraph " 18 " the complaint states: " That the plaintiff, by virtue of the provisions of Section 18 of the Decedent Estate Law and the decisions thereunder, and by virtue of her election and award as aforesaid, was entitled to receive property contained in the said trusts sufficient to satisfy her one-half interest in the estate of the decedent."

In paragraph " 19 " it is alleged: " That plaintiff has made due demand upon the defendants Adam C. King, Albert J. Seligsberg and The Central Hanover Bank and Trust Company, the duly

qualified executors under the Last Will and Testament of the decedent, William Rice Hochster, to reduce into their possession and to transfer to the plaintiff a sufficient amount of the property contained in the said trusts to satisfy the award made to plaintiff as aforesaid, but that they have unreasonably refused so to do and plaintiff has at no time received any property contained in the said trusts."

Upon this appeal defendants do not attack the sufficiency of the allegations of the complaint, except to assert that the plaintiff is not entitled to share in the *inter vivos* trusts, because they were created prior to September 1, 1930, when what are now sections 18 and 83 of the Decedent Estate Law became effective, and that said sections could not create rights retroactively. They also contend that plaintiff, as surviving spouse, cannot maintain this action, for the reason that only the executors may bring an action of the present nature. In addition, they assert the claim of *res judicata*, which we will discuss separately hereafter.

In so far as appellants claim that the complaint is insufficient because plaintiff is attempting to obtain rights retroactively under sections 18 and 83 of the Decedent Estate Law, we think that they rest under a misapprehension as to plaintiff's position with respect to her rights. As we read the complaint, it asserts that by the *inter vivos* trusts decedent did not part with any of his property rights in the trust *res* in fact or in law, but in form only, and that decedent was possessed of the trust *res* as part of his property and estate when he died. Plaintiff, therefore, is claiming that under section 18 she is entitled to her distributive share of the trust property as part of her husband's estate. This, however, is not an attempt to apply the section retroactively. Decedent made a will after the effective date of section 18, and, therefore, that law was applicable in determining plaintiff's rights. (*Murray* v. *Brooklyn Savings Bank*, 258 App. Div. 132.) It does not follow, however, because plaintiff is asserting rights under section 18 that she is attempting to have the statute applied so as to affect rights which existed before the adoption of the statute. The issue which she is raising concerns the question of what property was part of the decedent's estate at the time of his death in 1933. What property should be included in the estate did not depend upon the provisions of section 18. It depended on ownership by decedent at the time of his death.

Both sides refer to the case of *Newman* v. *Dore* (275 N. Y. 371). We find that that case is to be applied to the present problem only in so far as it poses the question (which it left unanswered) whether the creation of a trust under which a settlor retains the

power to revoke the same and the full right to control the trustees, is a valid present transfer of the settlor's property rights in the trust *res*.

We are not required at this time to pass on the question whether, under the facts in the present case, either of the trusts involved comes within the supposititious case referred to in *Newman* v. *Dore* (*supra*) in that the rights reserved thereunder evince an intention on the part of the settlor to retain control of his property so as to make it merely an illusory transfer.

At the present time we are determining only the sufficiency of the pleadings, and are bound to deem true the allegations of the complaint that there was no transfer of property rights when the trusts were created, and that the trusts were " essentially illusory," and that the settlor was " substantially the owner " of the trusts' *res* down to the time of his death.

As we have pointed out, appellants treat these allegations as sufficient statements of ultimate fact concerning ownership. We think, therefore, that there was no attempt to apply section 18 retroactively and that Special Term properly held that the complaint was sufficient to state a cause of action.

The second question raised by appellants is as to whether an action of the nature of the present suit may be brought by plaintiff. We think that Special Term properly decided that plaintiff might prosecute this action. The Supreme Court has jurisdiction of an action to avoid *inter vivos* trusts. Though ordinarily only the representatives of an estate of a decedent may bring an action to recover the property of the estate, there are exceptions to this rule in cases of unreasonable refusal of the representatives to sue. (*McQuaide* v. *Perot*, 223 N. Y. 75, 79.) The complaint herein alleges such refusal. Although plaintiff may eventually receive her portion of any property recovered in this suit only after it has been acquired as part of the estate of the decedent and distributed to her through the Surrogate's Court, this situation is one that frequently arises in actions brought in the Supreme Court involving property of a deceased person. In addition, it is to be noted that the present complaint demands damages against the executors. We need not determine at this time whether the Surrogate's Court would have jurisdiction to declare the trust void if the executors attempted to obtain this relief in the Surrogate's Court. In order to uphold the complaint, it is enough to find that the Supreme Court may afford plaintiff some of the relief which she has demanded in the present action.

This brings us to the sole remaining issue raised on this appeal, *i. e.*, whether the prior decree of the Surrogate's Court of Westchester

County finally settling the account of the executors and fixing the sum due to the plaintiff under section 18 of the Decedent Estate Law is *res judicata* as to the present issues. As frequently happens with respect to an inquiry concerning the plea of *res judicata,* the application of the controlling rules of law presents a difficult problem. The general rule that one who has had full opportunity to litigate a right is estopped from asserting that right a second time against the same parties is easily stated. The difficulty arises in applying the rule to the facts presented. In the present case the facts concerning the issues raised in the prior litigation are set forth in affidavits which are part of the record. We find no substantial dispute concerning the steps taken in the prior proceedings. We have before us copies of the pertinent allegations of the former pleadings, and of the relevant provisions of the decree in the Surrogate's Court. We think, therefore, we must determine, as a matter of law, whether the final decree of the surrogate estops the plaintiff from asserting her present claim.

It appears from the record that after the probate of the will of decedent, plaintiff, as surviving spouse, filed a notice of election to exercise the rights given her by section 18 of the Decedent Estate Law. She thereafter applied for a determination of her rights under said section and under section 145-a of the Surrogate's Court Act, addressing a petition to the surrogate for that purpose. Thereupon citations issued to all parties interested in the estate, including the present parties defendants. When plaintiff's petition came on to be heard, the surrogate ordered that decision thereon be reserved until the final accounting. Thereafter the executors brought a proceeding for the judicial settlement of their accounts. Plaintiff was served with a citation and appeared by her attorney. In the account filed there was a schedule known as subdivision (d) of A-1 of the account, wherein the executors set forth the following information as to the existence of the *inter vivos* trusts involved in the present action:

" (d) Property not passing through     Appraised Values
         hands of executors.            Nov. 1, 1933

" Memorandum entry:   *   *   *

" On or about Dec. 13, 1924 the decedent created a trust for the benefit of Jeannette Hahlo, retaining power of revocation. The market value of the corpus as of Nov. 1, 1933 was. . . .    7,350.64

" On or about Dec. 6, 1927 the decedent created another trust for the benefit of himself for life, retaining power of revocation. The market value of the corpus as of Nov. 1, 1933 was. . . .    65,621.87 "

In addition to the foregoing, the account contained a statement of the New York State and Federal estate taxes showing that the amounts thereof were arrived at by computing the average value of the *inter vivos* trusts for tax purposes. Thereafter the plaintiff served verified objections to the account of the executors. None of her objections, however, related to the *inter vivos* trusts, or to the failure of the executors to include the value of the trust *res* in the estate property. Later plaintiff's objections, with a single exception, were withdrawn by stipulation. The item involved in the excepted objection was allowed by consent. The issues raised by other objecting parties came on to be heard before the surrogate, upon which hearing plaintiff appeared by her attorney. The surrogate made his decision with respect to the issues, and thereupon entered a final decree disposing of same and judicially settling the executors' accounts. In said decree the surrogate found that, after crediting to the plaintiff certain sums which had been advanced to her by the executors, a stated amount remained due to the present plaintiff under her claim for allowance pursuant to section 18 of the Decedent Estate Law. The decree directed that this amount be paid to plaintiff. No appeal was taken from that decree, and the plaintiff has received the sum awarded her therein. The money which she received amounts to one-half of the estate of her husband as same was disclosed by the final accounting.

The defendants contend that during all the times in which her husband's estate was being settled, plaintiff was fully aware of the provisions of the *inter vivos* trust indentures. They assert that in an action for separation brought by plaintiff against decedent in his lifetime, photostatic copies of these trust indentures were placed in evidence by plaintiff.

Plaintiff submits no affidavits of her own on the present motion. Her present attorney merely asserts that neither she nor the attorney who represented her on the accounting proceeding knew at the time of the precise terms of the trust agreements; that they did not know of the existence of powers of control that decedent had reserved to himself over the trust property. It is conceded, however, that she had notice of the existence of the two trusts prior to the time that the surrogate settled the accounts.

The question presented is whether the decree of the Surrogate's Court is final and conclusive, because it adjudicated the same cause now presented by plaintiff, and determined her rights with respect thereto.

Section 274 of the Surrogate's Court Act provides: " A judicial settlement of the account of an executor * * * by the decree of the Surrogate's Court * * * is conclusive evidence against

all the parties of whom jurisdiction was obtained * * * as to all matters embraced in the account and decree."

The rule concerning the effect of a former judgment as an estoppel is stated in *Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.* (250 N. Y. 304, at pp. 306 and 308) as follows: " A judgment in one action is conclusive in a later one not only as to any matters actually litigated therein, but also as to any that might have been so litigated, when the two causes of action have such a measure of identity that a different judgment in the second would destroy or impair rights or interests established by the first [*Cromwell* v. *County of Sac,* 94 U. S. 351; *Reich* v. *Cochran,* 151 N. Y. 122]. It is not conclusive, however, to the same extent when the two causes of action are different, not in form only [*Baltimore S. S. Co.* v. *Phillips,* 274 U. S. p. 321], but in the rights and interests affected. The estoppel is limited in such circumstances to the point actually determined (*Cromwell* v. *County of Sac, supra*). * * * The decisive test is this, whether the substance of the rights or interests established in the first action will be destroyed or impaired by the prosecution of the second."

In *Karameros* v. *Luther* (279 N. Y. 87, at p. 91) it was said: " The principle of *res judicata,* however, when considered in connection with the facts in the case at bar, does not apply to the determination of facts immaterial to the issue decided, and this is true even though such facts have been put in issue by the pleadings. (*Rudd* v. *Cornell,* 171 N. Y. 114.) The prior judgment is conclusive only as to facts which have such a relation to the issue that their determination was necessary to the decision of the issue. (*Griffen* v. *Keese,* 187 N. Y. 454; *House* v. *Lockwood,* 137 N. Y. 259, 268.)"

It has also been held that upon the judicial settlement of the accounts of an executor, a party who was at liberty to file objections to the account and contest the validity of any item embraced therein, but who failed to assert his legal right to do so is bound by the decree upon such settlement, which is conclusive evidence that the items allowed are correct. (*Hull* v. *Hull,* 225 N. Y. 342, 353.)

Mindful of these general statements of the law, we are required to determine whether the prior decree of the surrogate is conclusive as to the claim plaintiff now asserts concerning the property rights of her husband in the trusts' *res* at the time of his death. In order to determine this question, we must inquire as to whether these matters were embraced in the final account heretofore settled; whether they were material to the issues then decided; and as to whether the substance of the rights established before the surrogate might be impaired or destroyed by a judgment in this action. It

is to be remembered that the accounting proceedings included the determination not only of the propriety of the debits and credits found therein but of the issues raised by the petition of the plaintiff, as widow, to have her rights under section 18 determined by the surrogate.

It would be clear that if neither of the parties knew of the existence of the trust property when the accounting was filed, and no reference was made to same, a decree settling the accounts would not bar an action of the present nature. That is not the present situation. Here there was knowledge of and reference to the trust property. How far there was any intention to determine whether the disputed property made up part of the estate would largely depend on the effect of Schedule A-1 (d) of the account, which recites that the trust property which is described therein is property "not passing through hands of executors." We think that the reasonable inference to be drawn from the said declaration is that those interested in the estate were being advised that the two trusts now sought to be avoided were in existence, and that the executors were claiming that the decedent had no property rights in the trust *res* involved in either trust, and that they were doing so to enable the court to fix the amount due to the wife. The prelude to the account recited: "Schedule A-1, hereto annexed, contains an inventory of the estate as determined in New York estate tax proceedings, being an itemized statement of all moneys and other property received by the executors or by any person for them or on their behalf as such executors, and constituting principal of said estate, together with the value thereof at which received." The decree entered upon the settlement provided that upon making the payments required thereunder the executors "be and they hereby are released and discharged from all further liability or responsibility as such executors, as to all matters embraced in this accounting."

One of the issues raised by plaintiff's petition for the adjudication of her rights under section 18 of the Decedent Estate Law was that the amount due her from the estate be fixed. In order to fix the said amount it was necessary to determine not only the part of the estate to which she was entitled, but the amount of property included in the estate that she should receive upon such apportionment. We think that her attention was called to the fact that the executors were contending that the principal of the *inter vivos* trusts was not to be included in the amount that she would receive upon such fixation and apportionment, and that she was bound to object to this contention if it was incorrect. That plaintiff recognized the necessity for filing objections, in order to

preserve her rights as to the amount she was to receive, is shown by the fact that she filed certain objections which raised issues concerning other items involved in the account.

If, as would presently appear, plaintiff upon the accounting in the Surrogate's Court, had her attention called to the trusts and was of the opinion that they created real and not illusory transfers of property rights, then plaintiff may not now change her position to the detriment of the accountants, merely because she has received advice to the contrary. Even assuming that she had not received exact copies of the trust indentures prior to the time of the accounting, clearly she was given notice of the existence of the trusts and advised that the power of revocation was reserved by the settlor under them. Plainly she might have litigated the issue concerning the legal effect of what was done by decedent in retaining certain rights under the trust indentures. To litigate that issue she was required to file proper objection. Her contention that the surrogate would have no right to avoid the *inter vivos* trusts is beside the point. At least he could have directed that an action be brought for that purpose. We are at a loss to know what more the executors could do to call attention to the fact that the trust property was not to be considered part of the estate. They could neither charge nor credit themselves with the value thereof in the schedules. Either they did what they did out of excess of caution, or to indicate that the property was not embraced in the estate, in order to have rights adjudicated. The latter intention is indicated. We think that their declarations concerning the trusts were material to the issues presented before the surrogate, one of which was the amount that plaintiff was to receive under section 18 of the Decedent Estate Law. We hold, therefore, that plaintiff is estopped from asserting her present claim that the principal of the trusts was part of decedent's estate, for if she is permitted to do so she would destroy or impair rights settled by the accounting decree — one such right being that of the executors to a discharge from liability on paying the sums directed thereby. We hold that the plea of *res judicata* should have been upheld, and plaintiff's complaint dismissed.

The orders appealed from should be reversed, each with ten dollars costs and disbursements, and the motions to dismiss the complaint granted.

GLENNON and DORE, JJ., concur; MARTIN, P. J., dissents and votes to affirm.

Orders reversed, each with ten dollars costs and disbursements, and the motions to dismiss the complaint granted.