In the Matter of the Estate of Max Harrison, Deceased. David Wiener et al., Appellants; Harold M. Harrison et al., Respondents.

Second Department, May 13, 1974.

*Sassower & Postel* (*Jay Leo Rothschild* and *Sanford Postel* of counsel), for appellants.

*Harold M. Harrison,* respondent in person, and for Bertha Harrison and others, respondents.

*Joseph T. P. Sullivan* (*Irving J. Seaver* of counsel), guardian ad litem for Glenn Harrison and others, respondents.

Shapiro, Acting P. J. The Surrogate, by the decree judicially settling the final account of the executors of the will of Max Harrison, held that the appellants were bound by the terms of a stipulation of settlement to which they were not parties and he accordingly dismissed their motion to vacate certain terms of the settlement. We disagree and therefore reverse.

The salient facts, free of irrelevant family history which permeates the briefs submitted by the appellants and the respondents Harrison, are, so far as material, as follows:

Max Harrison died testate on April 15, 1963 and letters testamentary were issued to Harry Levy and Charles B. Weiss, who were named in the will as executors and also as trustees of trusts provided for therein.

By paragraph Ninth of his will the testator bequeathed and devised the residue of his estate to his trustees, with the direction that they divide it into eight shares, to be allocated into the following percentages: 20% to his son Harold Harrison, 20% to his daughter Claire Wiener, 15% to his daughter Anne Goldberg, 15% to his son Leonard Harrison, 15% to his wife, Pearl Harrison, 5% to the surviving children of Harold Harrison, 5% to the surviving children of Leonard Harrison and 5% to the surviving children of Claire Wiener.

With respect to the 5% parts allocated to each of the three sets of grandchildren, the will provided that the net income and principal, if necessary, of each part be devoted, in equal shares, to their support and education until each such grandchild shall reach the age of 25 years and that at that time such grandchild's share of the 5% part shall be paid over to him.

The executor's final account discloses that the estate was insolvent to the extent of more than $300,000. When the estate passed into the hands of the executors and trustees it was worth $3,839,112.56, consisting mainly of mortgages on real property. During the administration of the estate, the net principal decrease amounted to $1,695,705.77. The executor expended $1,437,884.73 out of principal. The principal on hand, as reflected in the final account, was $705,522.06, consisting of $426,002.86 in cash and $279,519.20 in participation interests in purchase-money mortgages. The executors also had income on hand of $286,227.32. Thus, the total of principal and income on hand amounted to $991,749.38. However, outstanding debts against the estate amounted to $1,307,657.64, including an allowed but unpaid claim of the United States Government (Internal Revenue Service) in the amount of $1,201,289.20. Hence, without considering the unpaid administration expenses, the estate was insolvent by more than $300,000.

Appellant David Wiener, the adult grandson of the testator, was properly served with the citation in this proceeding, but neither appeared nor filed objections therein. His parents, appellants Julian and Claire Wiener, waived service of the citation, consented to a judicial settlement of the account and said

they would not file objections. The other devisees and legatees appeared and filed objections to the account. The objections of respondents Harrison and the Government included claims of misconduct, dereliction of duty and conflict of interest on the part of the executors. The guardian ad litem examined the objections and joined in most of those filed by the Harrisons.

All of the interested parties, *save the appellants,* appeared at the hearing on the objections to the account. It began on February 13, 1973 and terminated the next day when a settlement was reached and a stipulation agreed to by the parties who had appeared, which was read into the record. By its terms, the settlement agreement provided that the executors waived all claims for unpaid commissions; a law firm and an accounting firm waived their claims for legal and accounting services to the estate; and the Government withdrew its objections and agreed to accept all of the estate assets in satisfaction of its undisputed claim for unpaid taxes. The Government further agreed that, in consideration of the withdrawal by the other objectants of their objections, a 50% share of the mortgage participation interests (i.e., $139,759.60) was to be transferred as follows: 30% to respondent Harold M. Harrison; 8.75% to each of testator's grandchildren (which included appellant David Wiener and his brother Paul Wiener); and 8.75% to the estate of Anne Goldberg.

The appellants thereafter moved for an order vacating and setting aside the stipulation and for different directions as to the distribution of the estate assets. Basically, what they sought to set aside was not the settlement under which the Government had relinquished for distribution $139,759.60 by the settlement, but the proportions by which that sum of money was to be divided by the stipulation.

The Surrogate denied the application, on the grounds that it would work a serious injustice upon the litigants who had acted promptly in protecting their rights; that no showing had been made to excuse the appellants for their nonappearance or failure to file objections; that without the settlement the estate would have been rendered totally insolvent; and that the payments were not to be made in accordance with the terms of the will because the moneys had become available only as a result of the surrender of a claim by the United States Government.

Thereafter, the Surrogate signed a proposed final decree to which objection was taken on the grounds that the Surrogate lacked jurisdiction to impose the terms of the settlement upon the appellants and that it was improper to make distributions which were contrary to the terms of the will.

What happened here thus was that the objectants, the creditors and the executors agreed upon a settlement by virtue of which funds became available to the estate, *which were to be distributed in a manner inconsistent with the testamentary plan, to the detriment of the appellants, who had never received notice, in any form, of an intention to depart from the testamentary scheme.* I do not believe that such a practice is legally sustainable. Moreover, it is unsound, potentially mischievous and an invitation to fraudulent practices.

I cannot agree with the theory of the respondents which is, in practical effect, that moneys realized as the result of objections to an accounting are booty, to be distributed by the objectants and the executors *as they see fit,* without reference to the testamentary scheme *and without notice* to legatees or devisees of an intent to deviate from that scheme.

As Surrogate WINGATE noted in *Matter of Sidman* (154 Misc. 675, 680–681): "Where, under a will, a person, whether adult, infant, unknown or unborn, receives a tangible right of interest, the absolute elimination of such right or interest without any compensating advantage is not a compromise — it is a complete surrender, a making of a present — and such an act is beyond the deputed power of the court. So long as there is a possibility that any such person may have a right, however remote or contingent, the court possesses no authority to validate an agreement which totally nullifies it, for the reason that no such power has been accorded. Living persons who are *sui juris* may make gifts of their interests if such action suits their humor, others may not, and the court, as the protector of the interests of the latter, may not do it for them."

Objections form the basis of a contest in an accounting proceeding. They constitute pleadings and, with the account itself, define the issues which may be heard by the Surrogate (*Matter of Woodward,* 69 App. Div. 286; *Matter of Heuser,* 87 Hun 262). Where these pleadings give no notice of an intention to interfere with the testamentary scheme, there is no jurisdiction in the court to distribute the estate, save in accordance with that scheme (cf. *Matter of Kilborn,* 232 App. Div. 580; *Hochester* v. *City Bank Farmers Trust Co.,* 260 App. Div. 712).

By failing to object to the account the appellants admitted its correctness (see *Matter of Sullivan,* 289 N. Y. 323; *Matter of Weston,* 91 N. Y. 502), but they did not thereby waive their right to receive their proportionate share of any moneys which would come into being by reason of objections filed by others. They had no reason to assume that, if the objectants were successful

in their attempts to render the estate solvent, they (the appellants) would nevertheless be deprived of their shares of the estate. The fallacy in the disposition below is clearly demonstrated by the following: If, for example, the recipient of a minor legacy were the only person to file objections to an account and successfully managed to increase its assets in a substantial amount by settlement or otherwise, it certainly would not be held that he and the executor could treat that gain as "swag" and distribute it to the exclusion of the other legatees and devisees who had never received notice of an intention to depart from the testamentary scheme of distribution. Such a holding could open the door to nefarious collusive schemes between executors and legatees which would effectively permit them to distribute large portions of assets of estates as they chose in derogation of the testamentary bequests and to the exclusion of the objects of the testators' bounty.

Although, in form, and clearly as part of the respondents' improper plan, the mechanism used in the settlement, ratified in the decree under review, was the transfer of funds from the Federal Government to the objectants, in truth and in fact the Government took all of the assets of the estate, less $139,759.60, thereby enriching the estate by that amount.

Accordingly, the decree insofar as appealed from, and the order, should be reversed, on the law, with costs to the appellants against the respondents Harrison personally, and the proceeding remanded to the Surrogate's Court for further proceedings to distribute the said sum of $139,759.60 in accordance with this opinion.

COHALAN, CHRIST, BENJAMIN and MUNDER, JJ., concur.

Decree of the Surrogate's Court, Queens County, dated October 25, 1973, insofar as appealed from, and order of the same court, dated August 22, 1973, reversed, on the law, with costs to appellants against respondents Harrison personally, and proceeding remanded to said court for further proceedings to distribute the sum in question, $139,759.60, in accordance with the opinion rendered herewith.